Nottingdale Homeowners' Association, Inc., Appellant, *v.* Darby et al., Appellees.

[Cite as Nottingdale Homeowners' Assn., Inc. *v.* Darby (1987), 33 Ohio St. 3d 32.]

(No. 86-1518—Decided October 14, 1987.)

*Barron & Peck* and *Daniel M. Bennie,* for appellant.

*Howard F. Breitholle,* for appellees.

DOUGLAS, J. This is a case of first impression requiring us to determine whether two parties, in a non-commercial transaction, may lawfully contract to require, in a suit between them, the payment by the unsuccessful party of the prevailing party's attorney fees. We hold that they may do so and, accordingly, reverse the decision of the court of appeals.

A majority of state supreme courts currently recognize and follow the "American Rule" regarding the recovery of attorney fees by the prevailing party in a civil action. This

rule provides "* * * that attorney's fees are not ordinarily recoverable in the absence of a statute *or enforceable contract providing therefor.*" (Emphasis added.) *Fleischmann Distilling Corp.* v. *Maier Brewing Co.* (1967), 386 U.S. 714, 717. See, also, *Alyeska Pipeline Service Co.* v. *Wilderness Society* (1975), 421 U.S. 240, 257, and Comment *d* to Section 356 of the Restatement of the Law 2d, Contracts (1981) 160, which provides in part: "Although attorneys' fees are not generally awarded to the winning party, if the parties provide for the award of such fees the court will award a sum that it considers to be reasonable."[4]

Contrary to this majority position, appellees argue, and the court of appeals found, that in Ohio attorney fees are not to be awarded to a successful litigant absent statutory authorization or bad faith by the unsuccessful litigant. In support of their contention that "fee-shifting" agreements are unenforceable in this state, appellees cite case law which stands for the proposition that attorney fees *are not taxable as costs* against an unsuccessful litigant in the absence of statute. In so doing, appellees ask us to ignore the

---

[4] At least twenty-nine state supreme courts and the District of Columbia have recognized the contract exception to the "American Rule" regarding attorney fees: Alabama, *Eagerton* v. *Williams* (Ala. 1983), 433 So. 2d 436, 450, appeal affirmed after remand (1984), 460 So. 2d 850; Arizona, *DVM Co.* v. *Stag Tobacconist, Ltd.* (1983), 137 Ariz. 466, 468, 671 P. 2d 907, 909; California, *Reynolds Metals Co.* v. *Alperson* (1979), 25 Cal. 3d 124, 127, 599 P. 2d 83, 85, 158 Cal. Rptr. 1, 2; Connecticut, *Gino's Pizza of East Hartford, Inc.* v. *Kaplan* (1984), 193 Conn. 135, 140, 475 A. 2d 305, 308; District of Columbia, *Wisconsin Ave. Assoc., Inc.* v. *2720 Wisconsin Ave. Co-op. Assn.* (D.C. 1978), 385 A. 2d 20, 24; Florida, *Penthouse North Assn., Inc.* v. *Lombardi* (Fla. 1984), 461 So. 2d 1350, 1353; Hawaii, *THC Financial Corp.* v. *LR & I Development One* (1982), 65 Haw. 477, 653 P. 2d 789; Idaho, *Hellar* v. *Cenarrusa* (1984), 106 Idaho 571, 578, 682 P. 2d 524, 531; Illinois, *Abdul-Karim* v. *First Federal S. & L. Assn. of Champaign* (1984), 101 Ill. 2d 400, 411-412, 78 Ill. Dec. 369, ___, 462 N.E. 2d 488, 493; Indiana, *Kikkert* v. *Krumm* (Ind. 1985), 474 N.E. 2d 503, 504-505; Iowa, *Bethards* v. *Shivvers, Inc.* (Iowa 1984), 355 N.W. 2d 39, 47; Maine, *Elliott* v. *Maine Unemployment Ins. Comm.* (Me. 1984), 486 A. 2d 106, 111; Massachusetts, *Lincoln St. Realty Co.* v. *Green* (1978), 374 Mass. 630, 631, 373 N.E. 2d 1172, 1173; Mississippi, *Grisham* v. *Hin-ton* (Miss. 1986), 490 So. 2d 1201, 1206; Minnesota, *Anderson* v. *Medtronic, Inc.* (Minn. 1986), 382 N.W. 2d 512, 516; Missouri, *Mayor, Councilmen & Citizens of Liberty* v. *Beard* (Mo. 1982), 636 S.W. 2d 330, 331; Montana, *Carkeek* v. *Ayer* (Mont. 1980), 613 P. 2d 1013, 1015; Nevada, *First Interstate Bank of Nevada* v. *Green* (1985), 101 Nev. 113, 116, 694 P. 2d 496, 498; New Hampshire, *Pugliese* v. *Northwood Planning Bd.* (1979), 119 N.H. 743, 752, 408 A. 2d 113, 118; North Dakota, *Farmers Union Oil Co. of New England* v. *Maixner* (N.D. 1985), 376 N.W. 2d 43, 48; Oklahoma, *Webb* v. *Dayton Tire & Rubber Co.* (Okla. 1985), 697 P. 2d 519, 522; Rhode Island, *Farrell* v. *Garden City Builders, Inc.* (R.I. 1984), 477 A. 2d 81, 82; South Carolina, *Duke Power Co.* v. *South Carolina Pub. Serv. Comm.* (1985), 284 S.C. 81, 100, 326 S.E. 2d 395, 406; South Dakota, *Lowe* v. *Steele Constr. Co.* (S.D. 1985), 368 N.W. 2d 610, 614; Tennessee, *Pullman Standard, Inc.* v. *Abex Corp.* (Tenn. 1985), 693 S.W. 2d 336, 338; Utah, *Golden Key Realty, Inc.* v. *Mantas* (Utah 1985), 699 P. 2d 730, 734; Vermont, *Myers* v. *Ambassador Ins. Co., Inc.* (1986), 146 Vt. 552, 558, 508 A. 2d 689, 692; Washington, *Clark* v. *Washington Horse Racing Comm.* (1986), 106 Wash. 2d 84, 720 P. 2d 831, 835; Wisconsin, *Watkins* v. *Labor & Industry Review Comm.* (1984), 117 Wis. 2d 753, 345 N.W. 2d 482; Wyoming, *Bowers Welding & Hotshot, Inc.* v. *Bromley* (Wyo. 1985), 699 P. 2d 299, 307.

facts of this case and stand the law of contracts on its proverbial head. We decline to do so.

Appellees rely upon the following cases for support: *State, ex rel. Kabatek,* v. *Stackhouse* (1983), 6 Ohio St. 3d 55, 6 OBR 73, 451 N.E. 2d 248; *State, ex rel. Grosser,* v. *Boy* (1976), 46 Ohio St. 2d 184, 75 O.O. 2d 228, 347 N.E. 2d 539; and *Sorin* v. *Bd. of Edn.* (1976), 46 Ohio St. 2d 177, 75 O.O. 2d 224, 347 N.E. 2d 527. *None* of these cases, however, supports the conclusion that parties may not *contract* under circumstances like those of this case for the payment of attorney fees.

Neither *Kabatek, Grosser* nor *Sorin* involved a *contract* providing for the payment of attorney fees. In *Kabatek,* the issue involved back pay and civil service benefits — *no contract. Grosser* was a mandamus action to obtain copies of high school records — *once again, no contract.* Finally, *Sorin* involved the termination of employment, and appeal therefrom, of a superintendent of a board of education.[5] *Still no contract.*

As further support for their position, appellees cite *Coe* v. *Columbus, Piqua & Indiana Ry. Co.* (1859), 10 Ohio St. 372; *Gates* v. *Toledo* (1897), 57 Ohio St. 105, 48 N.E. 500; and *Miller* v. *Kyle* (1911), 85 Ohio St. 186, 97 N.E. 372. We find appellees' reliance upon these cases equally misplaced.

Neither *Coe, supra,* nor *Gates, supra,* involved a contract or stipulation to assume the attorney fees of the other party. In fact, contrary to appellees' assertion, the court, in *Gates,* expressly recognized the contract ex-

ception to the general rule regarding attorney fees when it stated at 114, 48 N.E. at 502:

" 'If counsel fees are to be allowed as part of the damages in a case of this kind [breach of contract], *where there has been no contract between the parties which provides therefor,* we would not know where to draw the line, or say in what cases they should not be allowed * * *.' " (Citation omitted.) (Emphasis added.)

Accordingly, neither *Coe* nor *Gates* supports appellees' position that contracts to allocate attorney fees are unenforceable.

Although *Miller, supra,* does involve a stipulation to pay attorney fees, the case more specifically deals with a commercial transaction and a promissory note containing an attorney fee stipulation. Thus, *Miller* is factually a far cry from the case now before us which involves a specific contractual provision that was assented to in a non-commercial setting by competent parties with equal bargaining positions and under neither compulsion nor duress. Therefore, *Miller,* like *Coe, Gates, Kabatek, Grosser* and *Sorin,* provides no support for appellees' position that contracts providing for the payment of attorney fees in a non-commercial setting are unenforceable.

Appellees, absent any showing of misunderstanding, deception or duress, ask us to disregard the explicit terms of the condominium declaration and condominium by-laws by which they agreed to be bound. As shown above, the law in Ohio does not compel such a result nor are we prompted by

---

[5] It is interesting to note that while *Sorin* makes no express mention of the contract exception to the "American Rule," the two United States Supreme Court cases relied upon in *Sorin* for authority regarding the "American Rule," *Alyeska Pipeline*

*Service Co.* v. *Wilderness Society* (1985), 421 U.S. 240, 257, and *F.D. Rich Co.* v. *Industrial Lumber Co.* (1974), 417 U.S. 116, 126, both recognize the contract exception to the general rule.

appellees' arguments to institute such a rule.

It has long been recognized that persons have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced. This freedom "is as fundamental to our society as the right to write and to speak without restraint." *Blount* v. *Smith* (1967), 12 Ohio St. 2d 41, 47, 41 O.O. 2d 250, 253, 231 N.E. 2d 301, 305. Government interference with this right must therefore be restricted to those exceptional cases where intrusion is absolutely necessary, such as contracts promoting illegal acts. No such necessity exists in this case.

Appellees, when they purchased a unit in Nottingdale Condominium, freely agreed to be bound by the terms of the condominium declaration. The declaration provides that in any action for foreclosure or to collect delinquent assessments, reasonable attorney fees incurred by the homeowners' association shall be paid by the defaulting unit owner. The matter which prompted this litigation was appellees' continued refusal to pay the monthly sum required of each unit owner for necessary services. While refusing each month to pay the amount due, appellees continued to accept the benefit of these services, including snow removal, trash collection, lawn care, exterior painting, water service, and payment of liability insurance. These services were enjoyed by appellees at the expense of their neighbors, fellow unit owners who faithfully contributed their monthly pro-rata share to the fund which makes the services possible. Repeated good-faith efforts by appellant to collect appellees' unpaid obligations were ignored, necessitating the instant lawsuit. The expenses to prosecute this lawsuit, once again, must come from the fund supported by appellees' fellow unit owners. No amount of legal wrangling can obscure the fact that appellees knowingly accepted the services and must pay for them. To obtain this inevitable result, appellant has been forced by appellees' intransigence to incur large amounts in attorney fees to collect the relatively small amount of past due assessments.[6]

By refusing to enforce the provision which would require appellees to pay appellant's reasonable attorney fees, this court would make it virtually impossible for condominium unit owners' associations to recoup unpaid assessments from recalcitrant unit owners. The expense of collection would render the effort useless. The result would be that a unit owner, who for any reason does not wish to pay his

---

[6] The trial court determined the unpaid assessments to be $2,464.82, with additional late charges of $145. The attorney fees incurred by appellant in collecting this amount were $12,268.89, as of the date of the trial court's decision. The trial court, noting the large amount of these fees, was reluctant to award such an amount "* * * in what should have been a routine and simple case. * * *" However, the court recognized that "* * * the fact that the case did not remain routine and simple is due solely to the activities of the defendant in pursuing what he believed to be the proper course in this matter. The Court can sympathize with the defendant in standing for a principal [*sic*] in which he believes, but the Court finds, as a matter of law and evidence, that the plaintiff is entitled to recover a reasonable amount for their [*sic*] fees and expenses of suit. Since the only evidence before the Court is evidence presented by the plaintiff, and since there is nothing to indicate that the amount of fees incurred is not reasonable under all the facts of this case, the Court hereby awards judgment in favor of the plaintiff and against the defendants Darby, in the sum of $12,268.89. * * *"

monthly service assessment, can enjoy the benefits of such services and refuse to pay for them, secure in the knowledge that collection by the association will be prohibitively expensive. Under such circumstances, what incentive would exist for the unscrupulous unit owner to pay his assessments? Obviously, very little.

As can be seen, the fee-shifting agreement in this case protects the fund of the unit owners' association from potential bankruptcy, and the conscientious contributors thereto from the burden of paying for the delinquency of others. Without such fee-shifting agreements, unit owners' associations may have to abandon claims against debtors, such as appellees, as too costly to pursue. *With* such agreements, the debtor will be encouraged to pay to avoid litigation, and if litigation becomes necessary, the association's resources will be protected if its suit proves meritorious. A more ideal arrangement can scarcely be imagined.

In sum, this court will not interfere with the right of the people of this state to contract freely and without needless limitation. A rule of law which prevents parties from agreeing to pay the other's attorney fees, absent a statute or prior declaration of this court to the contrary,[7] is outmoded, unjustified and paternalistic.

Accordingly, we hold that provisions contained within a declaration of condominium ownership and/or condominium by-laws requiring that a defaulting unit owner be responsible for the payment of attorney fees incurred by the unit owners' association in either a collection action or a foreclosure action against the defaulting unit owner for unpaid common assessments are enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case.

We, therefore, reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

*Judgment reversed.*

MOYER, C.J., SWEENEY and HOLMES, JJ., concur.

LOCHER, WRIGHT and H. BROWN, JJ., dissent.

LOCHER, J., dissenting. I must vigorously dissent to the position taken by the majority in the case *sub judice.* Today's decision has no basis in Ohio law and defies simple logic. Furthermore, the decision perpetuates the *modern* "American" rule: *sue, sue, sue.*

Under a black-letter smokescreen of freedom of contract, the majority turns a basic collection case into a virtual "horn of plenty" filled with attorney fees for appellant. The majority fails to cite *one* Ohio case in which attorney fees were awarded absent a statute permitting the same or evidence that the unsuccessful party had acted in bad faith. The Ohio Revised Code does not contain any language permitting the recovery of attorney fees in actions such as the one at bar. Moreover, the General Assembly *has expressly provided* for the recovery of attorney fees, as part of

---

[7] A contract of adhesion, where the party with little or no bargaining power has no realistic choice as to terms, would likewise not be supportable.

litigation costs, with respect to certain statutory actions.[8]

Also, there is no evidence of bad faith present in the instant action. Appellant initiated this action and the Darbys presented an aggressive but realistic defense. Despite the majority's suggestions, the Darbys were not "deadbeats" who neglected to pay their bills. From 1978 until early 1983, the Darbys faithfully paid their monthly common assessments. The Darbys then discovered an extremely apathetic and unprofessional homeowners' association. They revealed how appellant failed to follow its own by-laws and challenged the legality of appellant's actions brought pursuant to those by-laws.[9] The fact "[t]hat appellees interposed a defense which was ultimately overruled does not, in and of itself, demonstrate bad faith." *State, ex rel. Kabatek,* v. *Stackhouse* (1983), 6 Ohio St. 3d 55, 56, 6 OBR 73, 74, 451 N.E. 2d 248, 249. Today's decision sends a harsh message to these individuals who believed that they were being wronged. That message is to pay the money and keep quiet now or you will certainly pay later. The majority ignores the observations of the United States Supreme Court that " 'one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel.' " *F. D. Rich Co.* v. *Industrial Lumber Co.* (1974), 417 U.S. 116, 129.

The majority cavalierly trots out a broad freedom of contract rule from a comment to the Restatement of Contracts and a litany of cases from other jurisdictions which do not closely resemble the action currently before this court. In fact, one of the cases cited by the majority, *Farmers Union Oil Co.* v. *Maixner* (N.D. 1985), 376 N.W. 2d 43, involved an action on an overdue account brought by an oil company against an agricultural products company. The agreement by the debtor company to pay its creditor's attorney fees was thrown out as being against public policy and void. The majority offers no support for the position it takes under the circumstances presented by this action. Under the instant facts, there is no support under Ohio case law or the case law of any

---

[8] See, *e.g.,* R.C. 163.21, 309.13, 733.61 and 1313.51.

[9] I agree with the following statement of the court of appeals contained in footnote 7 of its opinion: "One particular inconsistency in this case strikes this court immediately. On the one hand, appellee freely admits its unit owners haved [*sic*] failed to live up to their agreement with it in that they have failed to gather a quorum of themselves to conduct annual meetings and elect officers as required by the by-laws, they have raised monthly assessments by thirteen percent (13%) in a single year which is arguably improper, and they have authorized a professional manager to sign assessment liens, something we allow here by our view of R.C. 5311.18. These departures from the provisions of the by-laws of the home owners' association have been excused herein for one reason or another; for example, by finding certain unit owners acted as a *de facto* board of trustees.

"On the other hand, appellee now claims that in spite of their [*sic*] admitted failure to follow their [*sic*] by-laws or their [*sic*] 'loose' interpretation of them, appellant[s] should be held to a strict interpretation of them, and compelled to pay appellee's attorney fees for first alleging and then showing, at least in part, that appellee failed to follow such rules. One could legitimately accuse appellee of simultaneously urging strict construction of the by-law's attorney fee provision while demanding liberal or loose construction of the same by-laws concerning the selection and authority of its board of trustees."

other jurisdiction. Rather, the majority finds the attorney fees provisions to be a "neat idea," as a method of collecting debts.

The majority further finds a homeowners' association to be helpless without such attorney fees provisions. Has R.C. 5311.23 been repealed by the legislature? That section (still in effect) provides that a "* * * unit owner * * * is liable in a civil action for damages caused to any person by his failure to comply with any lawful provision of the condominium instruments." Certainly, a provision requiring payment of common assessments is a lawful provision contained in condominium instruments.

There is no doubt that the principle of freedom of contract is a sound one. However, its use is misplaced under the present circumstances. This action does not involve parties of equal bargaining power. Appellant makes no argument, and there is nothing in the record to indicate, that the Darbys had any opportunity to "bargain away" the attorney fees provisions before entering into this "contract." Purchasing a home is an experience fraught with emotion. When the "right place" is found, the decision to purchase is not only one of cold economics but is emotional as well. Clearly the buyer is at a distinct disadvantage. This case does not present parties in equal bargaining positions. Thus, this court should adhere to Ohio's well-established view that "contracts for the payment of counsel fees upon default in payment of a debt will not be enforced." *Miller* v. *Kyle* (1911), 85 Ohio St. 186, 192, 97 N.E. 372. See, also, *American Nursing Care of Toledo* v. *Leisure* (N.D. Ohio 1984), 609 F. Supp. 419, 433; *Federal Deposit Ins. Corp.* v. *Timbalier Towing Co., Inc.* (N.D. Ohio 1980), 497 F. Supp. 912, 929.

Finally, today's decision does nothing but reinforce the views of many that we have become an overly litigious society. The majority grants *carte blanche* to those who can insert attorney fees provisions into contracts to sue at will. Why not? The party having difficulty paying his debt because he just lost his job can pick up the tab. It's in the contract. Sue them, it's paid for. Moreover, the majority casually allows this small collection case of approximately $2,600 to become a financial bonanza for the attorneys in an amount *nearly five times* the amount owed. Former Chief Justice Burger mentioned in his annual report to the midyear meeting of the American Bar Association that he had organized a task force to study the state of justice in this country. In his address, he stated that one of the members of the task force "* * * provided an apt summary of the whole problem: 'some basic institutional reform in the legal profession is what is needed — lawyers have got to stop using the court system as a means of enriching themselves at the expense of their clients. *And the courts have got to stop allowing the lawyers to do it.*' "[10] (Emphasis added.) Unfortunately, today's decision will be viewed by many observers as perpetuating the problem the former Chief Justice speaks of. I cannot join in such a decision.

Therefore, I would hold that in the absence of a statute permitting the same, the attorney fees provisions embodied in the instant condominium instruments should be declared to be against public policy and void. Accordingly, I would affirm the decision of the court of appeals.

WRIGHT and H. BROWN, JJ., concur in the foregoing dissenting opinion.

[10] Burger, The State of Justice (April 1984), 70 A.B.A.J. 65.