Defendant Transportation Services Incorporated has appealed from a judgment of the Medina County Common Pleas Court that awarded plaintiff Premium Enterprises Incorporated liquidated damages and attorney fees in this breach of contract action. Defendant has argued: (1) that the trial court incorrectly refused to allow it to present evidence demonstrating plaintiff's role in the breach of the contract; (2) that the trial court incorrectly enforced the liquidated damages provision of the contract; and (3) that the trial court incorrectly determined the award of attorney fees to be proper and, to the extent it was proper, incorrectly determined the amount of attorney fees to award.[1] This Court affirms the judgment of the trial court because: (1) the trial court's refusal to allow defendant to demonstrate plaintiff's alleged role in the breach of the contract was not arbitrary, unreasonable, or capricious; (2) the liquidated damages provision was not a penalty, but was reasonable compensation for plaintiff's actual damages; and (3) the parties agreed that defendant would pay plaintiff's attorney fees and the trial court's award of attorney fees was supported by the evidence.
 I.
Defendant operates a trucking and warehouse business in Pennsylvania. Plaintiff leases employees to third parties in exchange for a management fee. During 1992, plaintiff contracted with defendant to lease several employees to defendant. Two agreements were ultimately signed, one on June 4, 1992, and the second on March 1, 1993.[2]
The agreement contained a liquidated damages provision. According to that provision, defendant agreed not to "employ or otherwise utilize" any of plaintiff's employees for nine months following completion "of any period of assignment," unless defendant paid $1000 for each employee "so employed or utilized." In addition, a provision in the contract required defendant to pay all plaintiff's costs and expenses, including attorney fees, incurred "in collecting payments due or to become due from [defendant] or enforcing any rights of [plaintiff] pursuant to this Agreement."
Defendant terminated the contract during July 1994, but continued to use fourteen of plaintiff's employees, leasing them through another company. Plaintiff, therefore, filed this action against defendant on November 16, 1994. By its complaint, it demanded $14,000 in liquidated damages pursuant to the contract. Defendant filed a counterclaim, alleging that plaintiff had breached the contract. It claimed that, although it had made payments to plaintiff to maintain workers' compensation coverage for the leased employees, plaintiff had failed to forward those funds to the appropriate state agencies, as it was required to do. Defendant demanded compensation for plaintiff's alleged diversion of those funds. That counterclaim was, however, dismissed before trial.
Plaintiff's claim was tried to the court on July 24, 1997. The trial court determined that the liquidated damages provision was not a penalty, and it awarded plaintiff $14,000, plus interest. In addition, it found that the attorney fees provision of the contract was enforceable and awarded plaintiff $7,469.83, plus interest, in attorney fees. Defendant timely appealed to this Court.
 II. A.
Defendant's first assignment of error is that the trial court incorrectly refused to allow it to present evidence demonstrating plaintiff's role in the breach of the contract. According to defendant, the evidence would have shown that plaintiff proposed increasing defendant's workers' compensation premiums by approximately $280,000. That rate increase, according to defendant, forced it to breach the contract, because otherwise, had it accepted the rate increase and paid the raised amount, it would have gone out of business.
The trial court did not allow defendant to introduce that evidence, ruling that it was not relevant to the trial. Defendant has essentially argued that plaintiff breached the contract first, forcing it to breach. Defendant was, therefore, relying on the affirmative defense of anticipatory repudiation.
In its answer to plaintiff's complaint, defendant failed to assert that affirmative defense. The trial court ruled that, because of defendant's failure in that regard, it had waived any argument that it was excused from performance of the contract. Consequently, according to the trial court, the responsibility for the breach was not an issue and defendant's evidence relating to the cause of the breach was not relevant.
Affirmative defenses, other than those listed in Rule 12(B) of the Ohio Rules of Civil Procedure, are waived if not raised in the pleadings or in an amendment to the pleadings. Jim'sSteak House, Inc. v. Cleveland (1998), 81 Ohio St.3d 18, 20. Defendant failed to assert in its answer that plaintiff had breached the contract first, thereby excusing its own performance. It also failed to move the trial court for leave to amend its answer to include that defense. The trial court did not incorrectly rule that defendant's evidence of that defense was not relevant, based on defendant's failure to raise that argument in its pleadings.
Defendant has pointed out that it did raise the equitable defense of unclean hands. Relying on that defense, it has argued that it should have been permitted to demonstrate that plaintiff had improperly raised the worker's compensation rates and, as a result, improperly forced defendant to breach the contract.
Contrary to defendant's position, the trial court did not err when it rejected defendant's claims that, pursuant to the doctrine of unclean hands, it had a defense to its breach of the contract. The trial court essentially determined that its equitable power had not been invoked. Instead, plaintiff's complaint alleged a legal action for breach of contract. The trial court did not incorrectly deny defendant's request to introduce evidence of plaintiff's role in the contract's breach.
Furthermore, even assuming that invoking the doctrine of unclean hands was sufficient to preserve the affirmative defense of anticipatory repudiation, that defense was not available in this situation. An anticipatory breach of a contract is a repudiation of the promisor's contractual duty before the time fixed for performance has arrived. McDonald v.Bedford Datson (1989), 59 Ohio App.3d 38, 40. "The repudiation must be expressed in clear and unequivocal terms; '[a] mere request for a change in the terms or a request for cancellation of the contract is not in itself enough to constitute a repudiation.' " Id. According to defendant's argument, the alleged repudiation in this case was merely an attempt to alter the terms of the contract, namely, to increase the workers' compensation premiums that defendant was obligated to pay. Plaintiff's action in that regard did not express an intent to repudiate. The trial court did not err by concluding that that defense was not relevant. Defendant's first assignment of error is overruled.
 B.
Defendant's second assignment of error is that the trial court incorrectly enforced the liquidated damages provision of the contract. It has argued that the provision in this case operated as a penalty and, consequently, should not have been enforced.
Ohio law permits enforcement of liquidated damages provisions. The Ohio Supreme Court has provided the standard by which to judge their enforceability.
 Whe[n] the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.
Samson Sales, Inc. v. Honeywell, Inc. (1984), 12 Ohio St.3d 27, syllabus, following Jones v. Stevens (1925), 112 Ohio St. 43, paragraph two of the syllabus. Above all, reasonable compensation for actual damages is the legitimate objective of a liquidated damages provision and, if the amount is manifestly inequitable or unrealistic, it will be regarded as a penalty.Samson, supra, at 28. In this case, the Samson test has been satisfied. As to the first prong, a representative of plaintiff testified at trial that damages from defendant's breach of the contract could not be precisely determined, apparently because different rates were charged as fees for each employee leased, depending upon that employee's position. Total damages for the nine month period that defendant utilized plaintiff's employees, however, would have been about $1000 per employee.
As to the second prong, the contract provision is not unconscionable, unreasonable, or disproportionate in amount. Generally, unconscionability includes an absence of meaningful choice on the part of one of the parties together with contract terms that are unreasonably favorable to the other party.Lake Ridge Academy v. Carney (1993), 66 Ohio St.3d 376, 383. "A contract is unconscionable if it did not result from real bargaining between parties who had freedom of choice and understanding and ability to negotiate in a meaningful fashion." Id. Nothing in the record suggested that either party was at a disadvantage concerning its negotiating position, or that either did not freely choose or understand the contract provision. In addition, the liquidated damages provision was not unreasonable. The damages essentially represented the fees that plaintiff would have collected had it been able to lease that employee to other entities. Finally, the provision was not disproportionate in amount. The $1000 per employee for nine months of work was a rough estimation of what plaintiff would have suffered after a breach. It was not necessary that the liquidated damages be exactly equivalent to the actual damages. See Id. at 383-384.
As to the third prong, the contract was consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach. Plaintiff's representative testified that the liquidated damages provision was the result of negotiation by plaintiff and defendant. In fact, the last line of that provision was added at defendant's request. The trial court could reasonably have concluded that the result expressed the intentions of the parties.
The liquidated damages provision in this case was reasonable compensation for plaintiff's damages from the breach of the contract. It was not enforced as a penalty. Defendant's second assignment of error is overruled.
 C.
Defendant's third assignment of error is that the trial court incorrectly determined the award of attorney fees to be proper and, to the extent it was proper, incorrectly determined the amount of attorney fees to award. It has argued that Ohio law has traditionally not enforced contractual agreements for attorney fees and that, in this case, the agreement between the parties was unenforceable.
Contrary to defendant's assertion that agreements for attorney fees are invalid, the Ohio Supreme Court upheld such an agreement, in a non-commercial setting, in NottingdaleHomeowners' Assn. Inc. v. Darby (1987), 33 Ohio St.3d 32. InDarby, the Supreme Court held that a provision in a condominium declaration and by-laws that allocated attorney fees was enforceable. The court explained:
 It has long been recognized that persons have a fundamental right to contract freely with the expectation that the terms of the contract will be enforced. This freedom "is as fundamental to our society as the right to write and to speak without restraint." * * * Government interference with this right must therefore be restricted to those exceptional cases where intrusion is absolutely necessary, such as contracts promoting illegal acts. No such necessity exists in this case.
Id. at 36 (citation omitted). Later cases have extended the reasoning of Darby to enforce agreements for attorney fees in commercial settings, when there is no evidence of unequal bargaining power, compulsion, or duress. See Goldfarb v. TheRobb Report, Inc. (1995), 101 Ohio App.3d 134, 147 (franchise agreement); Gaul v. Olympia Fitness Center, Inc. (1993),88 Ohio App.3d 310, 321-324 (collection and foreclosure action);Com-Corp Ind., Inc. v. HH Machine Tool Co. of Iowa (Oct. 31, 1996), Cuyahoga App. No. 69318, unreported, 1996 Ohio App. LEXIS 4795, at *28-30 (agreement to design and create machine dies); GMS Management Co., Inc. v. KK Ind., Inc. (Apr. 29, 1991), Stark App. No. CA8279, unreported, 1991 Ohio App. LEXIS 2036, at *7-8 (contract for commercial lease of premises); see, also, Sekeres v. Arbaugh (June 4, 1986), Medina App. No. 1470-M, unreported, at 3-7 (commodity futures trading agreement).
Defendant has not demonstrated that it entered into the agreement with plaintiff from a position of unequal bargaining power, or that it was influenced by compulsion or duress. Indeed, from the transcript of proceedings, it appears that the contract was negotiated between two entities experienced in business. Consequently, the contract provision providing for the allocation of attorney fees was enforceable. The trial court did not err by awarding plaintiff a reasonable amount of attorney fees.
Defendant has continued its argument by asserting that, if the attorney fees provision is enforceable, the trial court erred by awarding $7,469.83, when half of that money was expended by plaintiff defending the counterclaim. Defendant has argued that, at most, plaintiff should have been awarded $3,734.92. Defendant has apparently relied upon a statement by plaintiff's counsel in closing argument that half of the attorney fees were incurred defending the counterclaim filed by defendant. Defendant has concluded that, because the contract provided for an award of attorney fees only for expenses incurred in collecting payments or enforcing any rights of plaintiff concerning the contract, any expenses incurred defending the counterclaim could not be recovered under the contract.
Plaintiff's counsel testified to the amount of work he performed on the case and the bills charged for that work. Defendant did not seek to clarify that testimony on cross examination to demonstrate that some of that work went toward defending the counterclaim. The trial court could reasonably have concluded that the work performed by plaintiff's counsel concerned only the collection of the payments owed to plaintiff. Furthermore, even if half of the expenses did go toward defending the counterclaim, this Court cannot conclude that such expenses would have been excluded by the contract. The counterclaim, had it been successful, would have reduced plaintiff's recovery in this case. Plaintiff's defense of the counterclaim, therefore, was necessary to enforce its rights under the contract. The successful defense of the counterclaim increased plaintiff's recovery under the contract. Defendant's third assignment of error is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Medina, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellants.
Exceptions.
 -------------------- CLAIR E. DICKINSON FOR THE COURT
REECE, P. J., CARR, J., CONCUR
[1] Plaintiff's assignments of error have been rearranged for ease of discussion.
[2] According to plaintiff, the second agreement was signed merely to reflect the fact that it had changed its name. The two are apparently the same agreement, and it is the alleged breach of the second agreement that is the subject of this appeal.