[Cite as *Roberts v. Roberts*, 2021-Ohio-3857.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

Estella Roberts

    Appellant

v.

Roy C. Roberts

    Appellee

Court of Appeals No.  S-19-050

Trial Court No.  15 CV 903

**DECISION AND JUDGMENT**

Decided:  October 29, 2021

* * * * *

W. Evan Price, II, for appellant.

Corey J. Speweik, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from the judgment of the Sandusky County Court of

Common Pleas, awarding summary judgment to appellee, Roy Roberts, and against

appellant, Estella Roberts, on their competing claims for declaratory judgment. For the reasons that follow, we affirm, in part, and reverse, in part.

## I. Facts and Procedural Background

{¶ 2} The facts in this case are undisputed, and concern the enforcement of an oil and gas interest related to appellant's property ("the property"). On July 9, 1895, an oil and gas lease ("1895 interest") was executed that granted to the lessee, his heirs, or assigns, "all the oil and gas in and under [the property] together with the exclusive right to enter thereon for the purpose of drilling or operating for oil and gas, to erect, maintain and remove all structures, pipe lines and machinery necessary for the production and storage of oil, gas or water." The 1895 interest also included the following terms:

Should oil be found in paying quantities [on] the premises, second party agrees to deliver to the first party in the pipe line with which he may connect the well or wells, the One Sixth part of all the oil saved from said premises.

If gas only is found, second party agrees to pay One Hundred Dollars each year for the product of each well while the same is being used off the premises, and the first party shall have gas free of expense to light and heat the dwellings on the premises.

2.

The second party shall have the right to use sufficient gas, oil, or water to run all machinery used by him in carrying on his operation [on] said premises, and the right to remove all his property at any time.

If no well is drilled within Sixty days from this date unavoidable delays excepted then this grant shall become null and void.

The second party to pay to 1st party Fifty Dollars $50.00 per location, for each location, and if oil is found in paying quantities Four wells to be drilled each year, until eight wells are completed. Two wells to be drilled every six months until the place is all drilled in and should the party of the second part think that any part of said place would not pay to drill he is to cancel the lease on that part.

It is agreed by the parties to this contract that a failure on the part of the second party to comply with the terms of this contract renders this grant null and void and neither party to be held for any liability.

The 1895 interest was recorded on August 26, 1895. At least seven oil wells were drilled on the property under the interest.

{¶ 3} Eventually, the 1895 interest was assigned to appellee's predecessor in interest, Otto Semlow. Appellee assisted Semlow in drilling for oil on the property and maintaining the equipment. In 1979, Semlow assigned the 1895 interest to appellee. The

3.

assignment was recorded on December 12, 1979. Sometime thereafter, oil production on the property stopped.

{¶ 4} However, in 2013, after approximately 30 years, appellee resumed oil production. Consistent with the terms of the 1895 interest, appellee began sending royalty checks to appellant. On November 18, 2013, he sent two checks, one for $295.00, and the other for $98.50. On May 7, 2014, appellee sent a check for $400.00. On October 19, 2014, appellee sent a check for $414.41. On November 22, 2014, appellee sent a check for $271.26. On June 5, 2015, appellee sent a check for $197.03. Appellant accepted and deposited all of the royalty checks.

{¶ 5} Notwithstanding her prior acceptance of the royalty checks, on June 9, 2015, appellant sent a demand letter to appellee, asserting that appellee was operating the oil and gas wells without a valid lease. Appellant demanded that appellee either plug the wells within 30 days or negotiate a new lease.

{¶ 6} On September 16, 2015, appellant initiated the present matter by filing a complaint and a request for a preliminary and permanent injunction. In her complaint, appellant brought claims to quiet title, for slander of title, for conversion and trespass, and for a declaratory judgment that the 1895 interest had expired and was therefore null and void. On September 22, 2015, the trial court granted appellant a temporary restraining order.

4.

**{¶ 7}** On November 25, 2015, appellee filed his answer, and included a counterclaim seeking a declaratory judgment that his oil and gas lease was valid and enforceable.

**{¶ 8}** The trial court held a hearing, and on August 29, 2016, issued a preliminary injunction prohibiting appellee from entering the property. Notably, the record contains no evidence that the court ordered the execution of a bond to secure to appellee the damages he may sustain by virtue of the preliminary injunction, as set forth in Civ.R. 65(C) ("No temporary restraining order or preliminary injunction is operative until the party obtaining it gives a bond executed by sufficient surety, approved by the clerk of the court granting the order or injunction, in an amount fixed by the court or judge allowing it, to secure to the party enjoined the damages he may sustain, if it is finally decided that the order or injunction should not have been granted.").[1]

**{¶ 9}** The matter then proceeded to competing motions for summary judgment. The legal dispute centered on whether the 1895 interest was in actuality a lease or a fee interest, and whether the 1895 interest expired by operation of law due to a lack of production, or whether it was saved under Ohio's Dormant Mineral Act, R.C. 5301.56. On April 12, 2018, the trial court entered its judgment in favor of appellee, holding that

---

[1] We recognize that the trial court had the option "to set bond at a nominal amount or at zero." *Skiles v. Bellevue Hosp.*, 6th Dist. Sandusky No. S-06-002, 2006-Ohio-5361, ¶ 16, citing *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co., Gen. Commodities Div.*, 109 Ohio App.3d 786, 793, 673 N.E.2d 182 (10th Dist.1996).

regardless of whether the 1895 interest was in actuality a lease or a fee interest, the Dormant Mineral Act applied and saved the interest.[2]

{¶ 10} Following the award of summary judgment, the trial court held a hearing on damages. On November 5, 2019, the trial court entered its judgment awarding appellee $14,114.48 in lost profits, and $21,442.00 in attorney fees.

## II. Assignments of Error

{¶ 11} Appellant has appealed the trial court's award of summary judgment and damages, and now asserts two assignments of error for our review:

1. The trial court erred when it granted summary judgment in favor of Appellee and denied Appellant's cross-motion for summary judgment based on its determination that the 1895 Oil and Gas Lease on Appellant's property that was assigned to Appellee in 1979 was a fee interest subject to Ohio's Dormant Mineral Act in Section 5301.56 of the Ohio Revised Code.

2. The trial court erred when it awarded Appellee his attorney's fees as damages based on its determination that Appellant's Application for a Preliminary Injunction should not have been granted.

---

[2] The trial court entered its April 12, 2018 judgment before allowing the parties the opportunity to respond to the opposing motions for summary judgment. Subsequently, the trial court permitted the parties to file such oppositions, and on May 21, 2018, the court entered an order maintaining its prior judgment.

6.

## III. Analysis

## A. Summary Judgment

{¶ 12} In her first assignment of error, appellant argues that the trial court erred when it declared that the 1895 interest was subject to Ohio's Dormant Mineral Act and awarded summary judgment to appellee.

{¶ 13} We review the grant or denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 14} "In 1989, Ohio enacted the Dormant Mineral Act, codified in R.C. 5301.56, to address stale or abandoned mineral rights. Commonly, the mineral rights are severed from the surface rights of a parcel of land, and over time, sometimes repeatedly, the mineral rights may be further divided and transferred through various business and family transactions." *Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 25. "The General Assembly devised the Dormant Mineral Act as

7.

part of the Marketable Title Act, R.C. 5301.47 et seq., to provide a mechanism to reunite abandoned mineral interests with the surface property interest in order to clear title and promote the use of the mineral rights for development and production." *Id.*

{¶ 15} Relevant here, R.C. 5301.56(B)(3)(b) of the Dormant Mineral Act provides that upon the landowner's compliance with certain requirements, "(B) Any mineral interest held by any person * * * shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest" unless "(3) Within the twenty years immediately preceding * * * (b) There has been actual production or withdrawal of minerals by the holder from the lands."

{¶ 16} Notably, it is uncontested that there was actual production or withdrawal of minerals in the 20 years immediately preceding when appellant sought to have appellee's interest deemed abandoned. Instead, the issue presented by appellant is whether the 1895 interest is a "mineral interest," entitling it to be saved under R.C. 5301.56(B)(3)(b). To that end, R.C. 5301.56(A)(3) defines "mineral interest" as "a fee interest in at least one mineral regardless of how the interest is created and of the form of the interest, which may be absolute or fractional or divided or undivided."

{¶ 17} Appellant argues that the 1895 interest is a lease, not a fee interest, and thus the savings provision R.C. 5301.56(B)(3)(b) does not apply. Furthermore, appellant argues that the process for removing a forfeited lease is directly provided for in R.C. 5301.332, which states that a surface property owner on whose lands there are no

8.

producing or drilling oil or gas wells can gain clear title where the lessee has failed "to abide by specifically described covenants provided for in the lease, or because the term of the lease has expired." Appellant argues that it would be absurd to apply the savings provisions in R.C. 5301.56 to leases, and thus require a property to be dormant for 20 years before declaring that an expired lease has been forfeited.

{¶ 18} Appellee, on the other hand, argues that the 1895 interest is a fee interest subject to the provisions of R.C. 5301.56, citing several cases as support, which we will discuss below.

{¶ 19} In *Kramer v. PAC Drilling Oil & Gas, L.L.C.*, 197 Ohio App.3d 554, 2011-Ohio-6750, 968 N.E.2d 64 (9th Dist.), the Ninth District considered a lease similar to the one here. In *Kramer*, the Kocsises leased all of the oil and gas rights from the 149 acre property that they owned exclusively to McClanahan Oil. In exchange, McClanahan Oil agreed to pay the Kocsises one-eighth of the revenue it generated from selling gas produced on the property. The lease also provided that the Kocsises could take an unlimited amount of gas from any producing well for domestic purposes. Finally, the lease provided that "[a]t any time, Lessee, its successors or assigns, shall have the right to surrender this lease or any part thereof for cancelation, after which all payments and liabilities hereunder thereafter shall cease and determine, and if the whole is surrendered, then this lease shall become absolutely null and void." *Id.* at ¶ 2. On appeal, the Ninth District examined the lease, and found that it "separated the surface estate of the

9.

Kocsises' land from its oil and gas estates and conveyed ownership of the oil and gas estates to McClanahan Oil." *Id.* at ¶ 11. Thus, the Ninth District determined that McClanahan Oil "became the fee-simple owner of the conveyed oil and gas estates while the Kocsises retained a possibility of reverter as provided in the lease. Because of the possibility of reverter, McClanahan Oil's fee-simple estate in the oil and gas was a fee-simple determinable rather than a fee-simple absolute." *Id.*

{¶ 20} In *Buell*, the Ohio Supreme Court cited *Kramer* approvingly when it considered the nature of the oil and gas lease before it. *Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, at ¶ 52. In *Buell*, the issue was whether the recording of an oil and gas lease was a "title transaction" such that the interest would be saved by R.C. 5301.56(B)(3)(a), which provides that an interest would not be deemed abandoned if, within the past 20 years, "[t]he mineral interest has been the subject of a title transaction that has been filed or recorded in the office of the county recorder of the county in which the lands are located." In discussing oil and gas leases generally, the Ohio Supreme Court commented:

> There is no question that oil and gas leases are unique, as they "seemingly straddle the line between property and contract: they are neither residential leases nor commercial contracts for the sale of goods." Keeling & Gillespie, *The First Marketable Product Doctrine: Just What Is the "Product"?*, 37 St. Mary's L.J. 1, 6 (2005). "Oil and gas leases are

unusual in that they are not technically leases at all." Richardson, [Hite v.

Falcon Partners: *A Model Rule for Marcellus and Utica Shale States*

*Precluding the Use of Delay Rental Payments to Extend the Primary Term*

*in an Oil and Gas Lease*, 46 Akron L.Rev. 1133, 1144 (2013)].

> There is general consensus among the states that an oil and gas lease
> creates a property interest, but there is disagreement about the nature of that
> property interest. Keeling & Gillespie, 37 St. Mary's L.J. at 7. Some states
> have held that it is a fee simple determinable "in which the lessee enjoys
> title to all of the oil, gas, and other minerals * * * as long as the lease
> remain (sic) in effect," while others have concluded that it is an incorporeal
> interest in the minerals "in which the lessee enjoys the exclusive right to
> take all of the oil, gas, and other minerals." *Id.*

*Buell* at ¶ 41-42. In discussing the specific oil and gas lease before it, the Ohio

Supreme Court reasoned:

> The lease in this case grants the lessee an unequivocal and exclusive
> right to the mineral estate for a fixed term plus an indefinite extended term
> upon the happening of certain conditions, such as actual production of oil
> and gas or a prescribed payment to the lessor. Based on the vested nature
> of this grant, the oil and gas lease has been construed as transferring to the
> lessee a fee simple determinable in the mineral estate with a reversionary

interest retained by the lessor that can be triggered by events or conditions specified in the lease. [*Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129-130, 48 N.E. 502 (1897)].

*Id.* at ¶ 61. However, the Ohio Supreme Court did note that it was not deciding the nature of the oil and gas lease, and that the result would be the same "[e]ven if the lease transfers to the lessee something less than a determinable fee, * * * when the instrument grants the exclusive right to the mineral estate, i.e., the exclusive right and privilege to possess, use, and alter the estate to explore, develop, and produce oil and gas resources found therein." *Id.* at ¶ 65.

{¶ 21} Finally, in *DeVitis v. Draper*, 2017-Ohio-1136, 87 N.E.3d 656, ¶ 19 (7th Dist.), the Seventh District held that an oil and gas royalty interest was a "mineral interest" as defined in R.C. 5301.56(A)(3), and thus was subject to abandonment. In reaching that conclusion, the Seventh District reasoned that the Ohio Marketable Title Act, Chapter 5301, uses broad language such as "all interests, claims, or charges whatsoever," and "[a]ll such interests * * * however denominated," to indicate that the Marketable Title Act does not differentiate between types of interest but rather applies to all interests. *DeVitis* at ¶ 16. Expanding on that rationale, the court determined that the phrase "regardless of how the interest is created and of the form of the interest" in R.C. 5301.56(A)(3) likewise indicated the Dormant Mineral Act—which is part of the

Marketable Title Act—was intended to apply to the oil and gas royalty interest before the court. *DeVitis* at ¶ 17.

{¶ 22} Upon review, we find that the conclusions of *Kramer*, *Buell*, and *DeVitis*, are in line with longstanding Ohio precedent that

> there may be a complete severance of the ownership of the surface of land from the ownership of the different strata of mineral which may underlie the surface; and that *the creation of a separate interest in the mineral with the right to remove the same, whether by deed, grant,* lease*, reservation, or exception, unless expressly restricted, confers upon the owner of the mineral a fee-simple estate*, which is, of course, determinable upon the exhaustion of the mine.

(Emphasis added.)  *Moore v. Indian Camp Coal Co.*, 75 Ohio St. 493, 499, 80 N.E.6 (1907).  Here, the 1895 interest grants to appellee the exclusive right for an indefinite period of time to all of the oil and gas under the property.  Therefore, consistent with the reasoning in *Kramer*, *Buell*, and *DeVitis*, we hold that the 1895 interest granted to appellee a fee interest in the mineral rights, and thus constitutes a "mineral interest" as defined in R.C. 5301.56(A)(3).  *See Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129, 48 N.E. 502 (1897) ("The rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument.").  Consequently, the trial court did

13.

not err when it determined that appellee's interest had not been abandoned or forfeited in light of the savings provision in R.C. 5301.56(B)(3)(b).

{¶ 23} Furthermore, we reject appellant's argument that the application of R.C. 5301.56(B)(3)(b) in this instance conflicts with or frustrates the purpose of R.C. 5301.332. R.C. 5301.332 applies to leases that have "become forfeited for failure of the lessee or the lessee's successors or assigns to abide by specifically described covenants provided for in the lease, or because the term of the lease has expired." Here, there is no allegation that appellee failed to abide by a specific covenant of the 1895 interest, nor does the 1895 interest contain a provision regarding the length of the duration of the lease. Thus, the 1895 interest by its terms could last in perpetuity, and for that reason is the precise type of interest that the legislature sought to address through Section 5301.56 of the Ohio Dormant Mineral Act.

{¶ 24} Accordingly, appellant's first assignment of error is not well-taken.

### B. Attorney Fees

{¶ 25} In her second assignment of error, appellant argues that the trial court erred when it awarded $21,442.00 in attorney fees to appellee as damages for defending against the preliminary injunction. Notably, appellant does not contest the specific amount, but limits her argument to whether appellee is entitled to attorney fees at all.

{¶ 26} "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part

14.

of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7, citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 33-34, 514 N.E.2d 702 (1987). However, attorney fees may be awarded when provided for by statute, an enforceable contract, or when the prevailing party demonstrates bad faith on the part of the unsuccessful litigant. *Id.*

{¶ 27} Appellee argues that an additional circumstance in which attorney fees may be awarded is where the attorney fees were incurred during efforts to dissolve a preliminary injunction that is later determined should not have been granted. In support, appellee cites *Wumer v. Lake*, 6th Dist. Wood No. WD-88-053, 1989 WL 108759 (Sept. 22, 1989), in which we held that the trial court erred in refusing to award attorney fees to the defendant for his efforts to file a motion to dissolve the preliminary injunction and participate in a hearing on that motion, and remanded the matter to the trial court to determine the proper amount.

{¶ 28} Our decision in *Wumer* relied upon a line of cases beginning with *Noble v. Arnold*, 23 Ohio St. 264 (1872). In *Noble*, a preliminary injunction was granted upon the petitioner posting a bond, one of the conditions of which required the petitioner to pay to the defendant "the damages he may sustain by reason of the injunction in this action, if it be finally decided that the injunction ought not to have been granted." *Id.* at 264. The court held that "attorney fees and expenses necessarily incurred in obtaining a dissolution of an injunction, may be recovered as damages secured by the undertaking, when it is

finally decided that the injunction ought not to have been granted." *Id.* at paragraph one of the syllabus. However, the court cautioned "[b]ut where the attorney fees and expenses are incurred in defeating the action, and the dissolution of the injunction is only incidental to the result, such fees and expenses are not damages sustained by reason of the injunction, and no recovery therefor can be had upon the undertaking." *Id.* at paragraph two of the syllabus.

{¶ 29} A few years later, in *Riddle v. Cheadle*, 25 Ohio St. 278, 279 (1874), the Ohio Supreme Court reinforced the caution expressed in *Noble*, and reversed an award of attorney fees because "No additional attorney's fees were rendered necessary by the allowance of the injunction. All such fees paid would have been paid if the injunction had never been allowed. They can not, therefore, be said, in the language of the bond, to have been 'occasioned by the injunction.'"

{¶ 30} Subsequent cases applying the rules of *Noble* and *Riddle*, and which were relied upon by this court in *Wumer*, have likewise involved an injunction bond which included a term requiring the petitioner to pay to the defendant costs that may accrue on account of the injunction if it should ultimately be decided that the injunction should not have been granted. *See Hatch v. Newark Tel. Co.*, 2d Dist. Franklin No. 2117, 1932 WL 1787 (Mar. 23, 1932); *Allen v. Cole*, 88 Ohio App. 399, 100 N.E.2d 84 (1st Dist.1950).

{¶ 31} In *Wumer*, however, our decision makes no reference to an injunction bond. *See also Chillicothe Restoration Foundation v. Chillicothe Design Bd. of Review*,

16.

55 Ohio App.3d 114, 563 N.E.2d 34 (4th Dist.1988) (holding, without reference to an injunction bond, that the trial court erred by failing to award attorney fees necessarily incurred in obtaining a dissolution of a temporary restraining order). Upon review of the cases relied upon by *Wumer*, we find that our earlier decision was in error, and we overrule *Wumer* to the extent that it holds that attorney fees incurred in obtaining a dissolution of a preliminary injunction are recoverable in the absence of an injunction bond that requires the petitioner to pay damages that may be accrued on account of the injunction if it is finally decided that the injunction should not have been granted. *See WKBN Broadcasting Corp. v. Levin*, 7th Dist. Mahoning No. 91 C.A. 83, 1992 WL 73591, *3 (Mar. 30, 1992) ("[A]lthough in certain cases attorney fees can be awarded as damages in the case of a wrongfully obtained injunction, such can only be awarded under the bond and cannot go beyond it.").

{¶ 32} Here, appellee does not point to an injunction bond that was executed, and our review of the record does not reveal that one was ever ordered. Therefore, we hold that the trial court had no basis upon which to award attorney fees to appellee for his efforts to dissolve the preliminary injunction.

{¶ 33} Accordingly, appellant's second assignment of error is well-taken.

## IV. Conclusion

**{¶ 34}** For the foregoing reasons, we find that substantial justice has not been done the party complaining, and the judgment of the Sandusky County Court of Common Pleas is affirmed, in part, and reversed, in part. The trial court's award of summary judgment to appellee on his counterclaim for declaratory judgment that the 1895 interest is valid and in full force and effect, is affirmed. The trial court's award of $21,442.00 to appellee for attorney fees is reversed, and is hereby vacated. The parties are ordered to split the costs of this appeal evenly pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                    _____
                                                              JUDGE
Thomas J. Osowik, J.                

Christine E. Mayle, J.                        _____
CONCUR.                                                   JUDGE

                                                  _____
                                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.