[Cite as *Grande Arcade, Ltd. v. Grand Arcade Condominium Owners' Assn., Inc.*, 2017-Ohio-2760.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104890**

# GRAND ARCADE, LTD.

PLAINTIFF-APPELLANT

vs.

# GRAND ARCADE CONDOMINIUM OWNERS' ASSOCIATION, INC.

DEFENDANT-APPELLEE

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-833375

**BEFORE:** E.T. Gallagher, J., Kilbane, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** May 11, 2017

**ATTORNEYS FOR APPELLANT**

Michael D. Linn
Thomas Owen
Powers Friedman Linn, P.L.L.
23240 Chagrin Blvd., Suite 180
Cleveland, Ohio 44122


**ATTORNEYS FOR APPELLEE**

Robert E. Kmiecik
Joseph E. DiBaggio
Kaman & Cusimano, L.L.C.
50 Public Square, Suite 2000
Cleveland, Ohio 44113

Continental Management Co., pro se
C/O Stat. Agt. John G. Moir
2012 West 25th Street, Suite 810
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Plaintiff-appellant, Grand Arcade, Ltd. ("Appellant"), appeals an order granting summary judgment in favor of defendant-appellee, Grand Arcade Condominium Owners' Association, Inc. ("the Association"). Appellant raises three assignments of error:

> 1. The trial court erred in granting appellee's motion for summary judgment on the issue of whether the Condominium Documents required a commercial owner to pay a proportionate share of the cost associated with the installation of windows for the residential units.
>
> 2. The trial court erred in granting appellee's motion for summary judgment when the appellant raised a genuine issue of fact regarding the calculation of the assessment.
>
> 3. The trial court erred by issuing an order declaring that the appellant was responsible for the special assessment when the appellee did not file a counterclaim or otherwise seek affirmative relief from the court.

{¶2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶3} The Association is a corporate entity created for the purpose of managing 99 condominium units in the Grand Arcade, Warning Block, Klein-Marks, and Blair Block buildings. The buildings, which are located on St. Clair Avenue in Cleveland, Ohio, were built in the 1880s. Appellant is a member of the Association by virtue of its ownership of five condominium units in the Grand Arcade building. In 2006, the Association entered into a contract with Continental Management Company ("Continental") to act as

the Association's agent in performing management functions under the direction of the Association's board of directors ("the Board").

{¶4} In 2012, the Association determined that the windows and exterior masonry on Grand Arcade, Warning Block, Klein-Marks, and Blair Block buildings were in need of repairs. In an effort to prioritize spending, the Association obtained an engineering report that identified the areas in greatest need of repair, including the removal and replacement of existing window frames, trim work, glass, sash, screens, caulking, and sealing work throughout all four buildings. This case involves a dispute as to whether Appellant is responsible for a percentage of the assessment levied against Association members to pay for the expansive window replacement project ("the project").

{¶5} In January 2013, the Association, through the Board, determined that each member would pay a proportionate share of the cost for all "Common Element"[1] expenses, such as brick masonry, window frames, and the removal and replacement of window frames according to each member's percentage of ownership in the buildings. Individual unit owners would be responsible for the labor and material cost to replace the glass and sash on their own windows, if they had to be replaced. Appellant did not have any windows that needed to be replaced.

{¶6} In August 2013, the Association held a special meeting of the membership at which the Board approved the project. The Board informed members that individual unit

---

[1] The terms "Common Elements," "Limited Residential Elements," and "Units" are terms defined in the Association's Declaration and Bylaws.

owners were responsible for the cost to replace the glass and sash in their own windows. The Board estimated the project would cost between $1.3 and $1.7 million dollars and informed members that it would either levy a special assessment to members and/or secure financing to pay for the project. Either way, members would be charged their proportionate share of the cost.

{¶7} In October 2013, the Association received bids from three construction companies and awarded the bid to Miceli Glass, Inc. ("Miceli Glass") because its bid of $1,622,862 was the lowest and best bid. The Board voted to proceed with a special assessment for the project that would begin in January 2014 and run through September 2014. Members of the Association subsequently voted to allow the Association to obtain a loan to finance the project.

{¶8} The Association calculated the total cost per square foot for all windows based on Miceli Glass's bid. The total cost for the project was $167 per square foot, which was determined based on the total cost of the project divided by the total square footage of the affected windows. At the Association's request, Miceli Glass informed the Association that the price per square foot for the glass and sash portion of the windows to be installed was $60 per square foot. Accordingly, the Board determined that the Common Element expense for the window replacement project was $107 per square foot.

{¶9} In August 2014, the Board sent a letter to all condominium owners to discuss its decision to move forward with the window replacement project, the cost of the project,

and the payment options available to owners. Owners could either pay their respective shares in advance interest free, if paid by September 3, 2014, or through a loan that required monthly payments with interest over a 15-year term. Scott Sauter, Continental's chief operating officer, subsequently sent an email to Appellant's representative, Michael Carney ("Carney"), to clarify the cost allocation of the project. The email contained two spreadsheets that indicated Appellant would only be charged for the Common Element cost of the project, which was $107 per square foot.

{¶10} The project proceeded as planned, and Appellant did not make the advance payment for its share of project. By default, Appellant was subsequently placed on the 15-year loan repayment plan. Appellant was assessed a total of $108,000 based on its percentage of ownership in the buildings.

{¶11} In September 2014, Appellant filed a complaint against the Association and Continental seeking an order (1) declaring that it was "not responsible for paying any part of the assessed costs or expenses relating to the residential unit window project," (2) enjoining the Association and Continental "from assessing to and demanding from [Appellant] a percentage of the costs and expenses relating to the residential unit window project," and (3) awarding money damages resulting from the Association and Continental's alleged negligence. (Complaint ¶ 9-17.) Appellant further alleged that the Association and Continental negligently caused the deterioration of the windows and that the stated cost of the repair work was "grossly overstated."

**{¶12}** The parties filed competing motions for summary judgment. Appellant argued that because it owned commercial units, it was not responsible for any portion of the repair costs, which were limited to either residential "Units" or residential "Limited Common Elements." The Association, however, argued that based on the definitions of "Common Elements" and "Units" in the Association's Declaration and Bylaws, Appellant was responsible for its proportionate share of the project regardless of the fact that it owned commercial units.

**{¶13}** A magistrate determined that Appellant was responsible for the full amount of the assessment levied against it for the project. The magistrate concluded that, based on the unambiguous language in the Association's Declaration and Bylaws, "window frames" and associated costs were "Common Elements" of the property as opposed to "Limited Common Elements." The magistrate further determined that Appellant was responsible for its share of the cost to repair the "Common Elements."

**{¶14}** Appellant filed timely objections. In a journal entry adopting the magistrate's decision, the trial court explained, in relevant part:

> The court finds and declares that the window frames are a Common Element in the Declaration and Bylaws. The court further finds that and declares that "window frames" are not listed as a Common Element or in the description of a Unit and must, therefore, be a Common Element by virtue of the express terms of the agreement. The court further finds and declares that plaintiff, as a unit owner, is therefore responsible for the proportional assessment for the costs of window frames and window frame installation.

Accordingly, the trial court granted summary judgment in favor of the Association and denied Appellant's motion for summary judgment. Appellant now appeals the trial court's judgment.

## II. Law and Analysis

### A. "Common Elements"

{¶15} In the first assignment of error, Appellant argues the trial court erred in finding that the condominium documents, i.e., the Association's "Declaration and Bylaws," required a commercial owner to pay a proportionate share of the project. Appellant contends the trial court misinterpreted the contractual obligations embodied in the Association's Declaration and Bylaws.

{¶16} Condominium declarations and bylaws are contracts between the association and the purchaser and are subject to the traditional rules of contract interpretation. *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 35-36, 514 N.E.2d 702 (1987). A contract that is clear and unambiguous requires no real interpretation or construction and will be given the effect called for by the plain language of the contract. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989).

{¶17} Where a contract's terms are clear and unambiguous, its interpretation is as a matter of law, not fact, and may be adjudicated by summary judgment. *Dutch Maid Logistics, Inc. v. Acuity*, 8th Dist. Cuyahoga Nos. 91932 and 92002, 2009-Ohio-1783, ¶ 19. We, therefore, interpret the terms of the Association's Declaration and Bylaws de

novo. *Continental W. Condo. Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996).

{¶18} Appellant concedes it is responsible for its proportionate share of Common Element expenses, but asserts that none of the repairs in the project constitute Common Element expenses. In support of its argument, Appellant cites the definitions of the terms "Common Elements" and "Limited Common Elements" in Article I of the Declaration,[2] which state, in relevant part:

> (I) "Common Elements" include, unless otherwise provided in the Declaration, the following parts of the Condominium Property:
>
> * * *
>
> (2) All other areas, facilities, places, and structures that are not part of a Unit, including but not limited to:
>
> * * *
>
> (f) All other parts of the Condominium Property necessary or convenient to its existence, maintenance, and safety, or normally in common use, or that have been designated as Common Areas and Facilities in the Declaration or Drawings.
>
> * * *
>
> (U) "Limited Common Elements" means the Common Areas and Facilities designated in the Declaration as reserved for a certain Unit or Units to the exclusion of other Units, including those Limited Common Areas and

_____

[2] In 2005, the Association recorded an Amendment to the Declarations and Bylaws "to bring the Declaration in compliance with" R.C. 5311.05(E)(1). The amendment changed the term "Common Areas and Facilities" to "Common Elements," and changed "Limited Common Areas" or "Limited Common Areas and Facilities" to "Limited Common Elements." Therefore, we refer to any reference to "Common Areas and Facilities" and "Limited Common Areas" as "Common Elements" and "Limited Common Elements."

Facilities reserved exclusively for the Commercial Units ("Commercial Limited Common Elements") and those Limited Common Areas and Facilities reserved exclusively for the Residential Units ("Residential Limited Common Elements").

**{¶19}** Appellant also cites the following language from Article II, Section (A) of the Declaration that defines the term "Units," in part, as including "[a]ll window sashes."

**{¶20}** Appellant argues that because none of the definitions of "Common Elements" and "Limited Common Elements" include the words "windows," "glass," "sash," or "frame," none of the areas within the project fall within the scope of "Common Element" expenses. Appellant argues this conclusion is further bolstered by the fact that the definition of "Limited Common Elements" includes "[a]ll glass and screens within window and door frames within or attached to the perimeter walls of such Unit." Finally, Appellant argues that because the phrase "attached to the perimeter walls of such Unit" modifies the terms "window" and "door frames," it is consistent with the language in Article II, Section (A) that defines "Units," in part, as including "[a]ll window sashes" and "windows and glass frames * * * affixed to the perimeter walls." Appellant contends these definitions can only lead to the conclusion that these areas fall within the definition of Limited Common Elements and are not Common Elements.

**{¶21}** However, Appellant ignores the plain language contained in Article I, Section (I) that further defines "Common Elements," in part, as "[a]ll other areas, facilities, places, and *structures that are not part of a Unit*." (Emphasis added.) Thus, Common Elements include those elements that are not part of a Unit.

**{¶22}** Article I, Section (EE) of the Declaration defines "Unit" as "a part of the Condominium Property consisting of one or more rooms on one or more floors of the Building and designated as a Unit in the Declaration and delineated on the Drawings." Although the language Appellant quotes from Article II, Section (A) of the Declaration suggests that "all windows and glass frames * * * affixed to the perimeter walls" are part of a "Unit," Appellant takes that language out of context and ignores other language in that section that identifies areas excluded from the definition of a "Unit." Article II, Section (A) of the Declaration states, in relevant part:

> (A) Units. Each of the ninety-nine (99) Units hereby declared and established as a freehold estate shall consist of all space bounded by the interior (un-drywalled) surfaces of the perimeter walls, floors and ceilings of each such Unit, including the vestibule, if any, immediately adjacent to each such Unit, projected, if necessary, by reason of structural divisions such as interior walls and other partitions, the layout, location, designation and dimensions of each such Unit * * * including, without limitation:
>
> * * *
>
> All window sashes and doors exclusive of door frames in perimeter walls and space occupied thereby;
>
> * * *
>
> *but excepting therefrom* all of the following items located within the bounds of the Unit as described above and, to the extent the following are Common Elements or Limited Common Elements as defined in this Declaration, are to be used and enjoyed by the Unit Owner or Occupant of the Unit in or to which they are appurtenant:
>
> * * *
>
> All doors, door frames, glass doors, skylights, if any, and windows (and the glass and frames constituting or included therein) and window sashes,

affixed to the perimeter walls, floors, and roofs or ceilings of a Unit, which are hereby declared to be parts of said walls, floors, and roofs.

(Emphasis added.)

**{¶23}** The clear and unambiguous language of the Declaration states that "[a]ll window sashes and doors * * * in the perimeter walls and space" are specifically included as part of the "Unit" and excluded from the Common Elements. The language also indicates the confines of a "Unit" are "bounded by the interior (un-drywalled) surfaces of the perimeter walls." This language suggests that exterior perimeter walls are outside the Unit and fall within the scope of "Common Elements." *See State v. Cunningham*, 8th Dist. Cuyahoga No. 85342, 2005-Ohio-3840, ¶ 12 (applying the doctrine of expressio unius est exclusio alterius, a rule of contract construction that means "the expression of one thing is the exclusion of another").

**{¶24}** Additionally, the "but excepting therefrom" language specifically excludes window glass and frames from the definition of a "Unit" to the extent they may be defined elsewhere in the Declaration as "Common Elements" or Limited "Common Elements." Therefore, we must further examine the definitions of "Common Elements" and "Limited Common Elements" to determine if any parts of the project constitute "Common Elements" expenses.

**{¶25}** Article I, Section (B)(2) of the Declaration governs Common Elements and Limited Common Elements and states, in relevant part:

> Limited Common Elements. Each Unit Owner is hereby granted an exclusive and irrevocable license to use and occupy to the exclusion of all others the Limited Common Elements[,] *which are located within the bounds of his Unit and serve*

*only his Unit.*   The Limited Common Elements with respect to each Unit (or group of Units) shall consist of such of the following as may be construed to be Common Areas:

\* \* \*

(b) *All glass and screens <u>within</u> window \* \* \* frames* within or attached to the perimeter walls of such Unit; and all doors, hinges, locks, latches and hardware within or on the perimeter walls of such Unit or on the Limited Common Elements belonging to such Unit.

**{¶26}** This language indicates that glass and screens within window frames are "Limited Common Elements" whereas the frame itself and anything outside the window glass and sash are "Common Elements."   Article II, Section (B)(1) supports this interpretation and describes "Common Elements" as:

> *The entire balance of the land and improvements thereon*, including but not limited to, the Building, foundations, roofs, main and supporting walls, columns, girders, beams, halls, corridors, stairways *not within Units \* \* \** now or hereafter situated on the Condominium Property, all as hereinbefore more specifically described as "Common Elements" in Article I hereof, are hereby declared and established as the Common Elements. \* \* \* Unless otherwise provided by the Unit Owners' Association, however, the care, maintenance, repair and replacement of all or any portion of such elements or fixtures *located within a Unit* shall be the responsibility of the owner of such Unit.

(Emphasis added.)

**{¶27}** Neither the definition of a "Unit" nor the definition of a "Limited Common Element" includes the window frames that connect windows to the structure of any of the Association's buildings.   And since the description of "Common Elements" includes "[t]he entire balance of the land and improvements thereon" that are not located "within a Unit," the window frames, which are not part of individual units or "Limited Common Elements," are "Common Elements."

{¶28} Further, John Miceli ("Miceli"), of Miceli Glass, testified that much of the repair work to the windows occurred on the exterior walls of the building and included "trim work that had to be installed once the window frame was replaced in order to comply with the historical aspects of the requirements of the City of Cleveland." (Miceli Depo. at 85.)   The frame and trim were attached to the structure of the building. *Id.*   The exterior surfaces between the windows and the frame also required caulking. *Id.*   In Miceli's opinion, these materials were "Common Elements" expenses because they "had nothing to do with the window and the sash."   (Miceli Depo. at 86.)

{¶29} Nevertheless, Appellant argues that "pursuant to the terms of the Condominium Documents, all of the costs and expenses relating to the replacement of residential unit windows of the Grande Arcade are not its responsibility."   (Appellant's Brief at 10.)   Appellant cites the following language from Article V of the Declaration to support its argument:

> (A) The Owners of Commercial Units shall not be charged with Assessments attributable to the Residential Limited Common Areas * * * and the Owners of Residential Units shall not be charged with Assessments relating to the Commercial Limited Common Areas.

> (B)   The Owners of the Residential Units shall pay the expenses relating to the Residential Limited Common Areas on the basis that the Par Value of each Residential Unit bears the Par Value of all Residential Units and the Owners of the Commercial Units shall pay the expenses relating to the Commercial Limited Common Areas on the basis that the Par Value of each Commercial bears the Par Value of all Commercial Units.

{¶30} Although Appellant concedes it is responsible for "Common Elements" expenses, none of the language quoted by Appellant explains how its ownership of

commercial units exempts it from its obligation to pay its proportionate share of "Common Elements" expenses. With respect to an owner's duty to pay a share of "Common Elements" expenses, Article V states, in relevant part:

(A) General Assessments for the management, maintenance, repair and insurance of the Common Elements and amounts determined by the Board of Directors of the Association for the establishment and maintenance of the reserve fund to meet the cost and expense of repair and replacement of the Common Elements together with the payment of the Common Expenses, shall be made in the manner provided herein, and in the manner provided in the Bylaws.

(B) Division of Common Expenses, Common Assessments, Common Surplus, Common Profits and Common Losses. The proportionate share of the separate owners of the respective Units in the Common Expenses, Common Assessments, Common Surplus, Common Profits and Common Losses of the operation of the Condominium Property is based upon the percentage of interest in the Common Elements of such Units expressed in Article II(B)(4) hereof. * * * The obligation of an Owner to pay his proportionate share of Common Assessments shall commence upon such Owner's acquisition of his Unit.

(C) Non-Use of Facilities. No owner of a Unit may exempt himself from liability for his contribution toward the Common Expenses by waiver of the use or enjoyment of the Common Elements, or by abandonment of his Unit.

{¶31} Earlier we determined that window frames and the surrounding areas outside the frames are "Common Elements" because they are not included in the description and definition of "Units" or "Limited Common Elements." Article V(A) authorizes the Board to levy assessments against individual owners for "Common Elements" expenses, and Article V(B) mandates that individual owners pay his or her "proportionate share" of "Common Elements" "based upon the percentage of interest in

the Common Elements." Therefore, the Association had authority to assess Appellant for its proportionate share of the "Common Elements" portion of the project.

{¶32} It is undisputed that the Association assessed Appellant for its proportionate share of the labor and material cost for the removal and installation of new window frames. The assessment included the cost to repair the framing, remove windows, connect new windows to the exterior masonry walls, seal the windows, and install trim around the exterior face of the windows. The charges were levied against all owners regardless of whether an individual or entity owned a commercial or residential unit. Carney, Appellant's representative, admitted at deposition that Appellant was not charged for any glass window or sash portions of the project because none of its units needed new windows. Thus, the Association only charged Appellant for Common Element expenses. (Carney Depo. at 54.)

{¶33} Therefore, the trial court properly determined that Appellant was responsible for the "Common Elements" expenses of the window replacement project. The amount of the assessment is the subject of Appellant's second assignment of error.

{¶34} The first assignment of error is overruled.


**B.   Calculation of the Assessment**

{¶35} In the second assignment of error, Appellant argues the trial court erred in accepting the Association's stated cost of $108,000 for the "Common Elements" expenses. Appellant contends the $108,000 is not supported by the evidence and that

the Association's calculation of the Common Elements portion of the window replacement project was flawed.

**{¶36}** The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). Once the moving party demonstrates entitlement to summary judgment, the burden shifts to the nonmoving party to produce evidence related to any issue on which the party bears the burden of production at trial. Civ.R. 56(E).

**{¶37}** Summary judgment is appropriate when, after construing the evidence in a light most favorable to the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). We review an appeal from summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

**{¶38}** Appellant cites Miceli's deposition testimony to support its argument. When asked how Miceli estimated the cost of the sash and glass portion of the project, Miceli responded: "Those dollar amounts were what we in the industry call WAG, and that's a wild ass guess." (Miceli Depo. at 28.) He later stated that his estimate was "an arbitrary number." (Miceli Depo. at 66.) Out of context, this testimony suggests that Miceli had no reasonable basis for estimating the cost of the sash and glass portions of the project.

**{¶39}** However, Miceli explained that it was difficult to estimate the cost of the glass and sash because the window manufacturer refused to provide a breakdown of the cost. Nevertheless, in determining the cost of the glass and sash, Miceli considered the total cost of all the other materials and labor necessary to complete the project and subtracted those costs from the bottom line. In this way, he reasonably narrowed the range of the estimated cost of the sash and glass. (See Miceli Depo. at 66, 83-89.) Indeed, when asked whether his estimate of $60 per square foot for the glass and sash was a fair and reasonable cost for the labor and glass and sash material, Miceli replied, based on years of experience in the window replacement industry, "As I perceived it, yes." (Miceli Depo. at 89.)

**{¶40}** Appellant offered no evidence to refute Miceli's calculations. When asked what basis Appellant had to support its claim that the split between the cost per square foot for glass and sash and "Common Expenses" was excessive, Carney replied: "I personally do not know. It was never explained to me in a way that I could understand it." (Carney Depo at 55.) Carney further testified at deposition:

> Q: And do you have any information that would support that the association improperly calculated the percentage to Grand Arcade, Ltd.?
>
> A: I do not.
>
> * * *
>
> Q: And as we sit here today, you have no evidence to support that the basis for the cost allocation by [the Association] to Grand Arcade, Ltd., was incorrect?
>
> A: I do not.

Q: And you can provide no evidence — document evidence to support the fact that [the Association] did anything improper on how it allocated the cost to your company, Grand Arcade Ltd.?

A: No.

(Carney Depo. at 69, 74-75.)   Therefore, because Appellant failed to present evidence of the type required by Civ.R. 56(C) to create a genuine issue of material fact regarding the accuracy of the $108,000 assessment the Association levied against it, the trial court properly granted summary judgment in favor of the Association.

**{¶41}** The second assignment of error is overruled.

### C. Affirmative Declaratory Relief

**{¶42}** In the third assignment of error, Appellant argues the trial court erred in declaring that Appellant was responsible for the assessment where the Association did not file any claims for affirmative relief.   Appellant contends that because it was the only party seeking affirmative and declaratory relief, the trial court should not have affirmatively declared that Appellant is responsible for its proportionate share of the cost of the window replacement project.

**{¶43}** However, Appellant's claim for declaratory judgment asked the court to decide whether or not Appellant was responsible for its proportionate share of the cost of the project and whether the amount assessed for its share was accurate.   The trial court's judgment answered this question by declaring Appellant is responsible for its proportionate share of the "Common Elements" expense equal to $108,000.   The Association was not required to file a separate claim mirroring Appellant's claim in order

to benefit from this judgment. The court merely adjudicated the issues set forth in Appellant's complaint, nothing more.

**{¶44}** Therefore, the third assignment of error is overruled.

**{¶45}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
MELODY J. STEWART, J., CONCUR