[Cite as *Wood v. Cashelmara Condominium Unit Owners Assn., Inc.*, 2022-Ohio-1496.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

TIMOTHY WOOD, ET AL.,  :

    Plaintiffs-Appellants,  :

                                 No. 110696

    v.  :

CASHELMARA CONDOMINIUM  :
UNIT OWNERS ASSOCIATION, INC.,

    Defendant-Appellee.  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN
PART AND REMANDED
**RELEASED AND JOURNALIZED:** May 5, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-942871

---

*Appearances:*

Gertsburg Licata Co. LPA, Victor A. Mezacapa, III, and
Maximilian A. Julian, *for appellants*.

Reminger Co. LPA, Brian D. Sullivan and Brianna M.
Prislipsky; Kehoe & Associates LLC, Robert D. Kehoe and
Lauren N. Orrico, *for appellee*.

EILEEN A. GALLAGHER, J.:

{¶ 1} Appellants Timothy and Lani Wood contend that the trial court erred
in granting the Cashelmara Condominium Unit Owners' Association's (the
"Association") motion for summary judgment. We find that there does exist a

genuine issue of material fact regarding the timeliness and effectiveness of the Association's remediation efforts. Accordingly, we sustain appellants' first two assignments of error and the seventh assignment of error, in part. We, therefore, remand the case for further proceedings consistent with this opinion.

## I.    Factual and Procedural Background

{¶ 2}    Lani and Timothy Wood are the owners of Unit 31 in the Cashelmara condominium complex located in Bay Village, Ohio. This complex is managed by the Association and has several employees, including George Sirow as the property manager.

{¶ 3}    The unit immediately below the Woods' Unit is Unit 27 and was purchased in 2015 by SK2 Properties LLC, owned by third-party defendant, Steve Kish, at a foreclosure sale.

{¶ 4}    In August 2017, Kish began a remodeling project in Unit 27. As part of the project, Kish removed the drop ceiling from his unit to uncover the plenum space between his unit and the Woods' unit above. The plenum space contains ducts for several other units in the building. Above the plenum space is the floor for the Woods' unit. The only thing separating the plenum space from Kish's unit is a drywall drop ceiling. At some point in the remodeling project, Kish hired contractors who demolished the drop ceiling.

{¶ 5}    This work created a significant amount of debris and dust. The removal of the drop ceiling also eliminated a barrier that prevents the infiltration of dust into the Woods' unit and allowed such permeation. Kish also changed the

location and type of furnace in his unit. The new furnace was installed in the plenum space that had previously existed between the units. The Woods found that the new furnace, in its new location, made their unit uncomfortably hot.

{¶ 6} Documents in both the summary judgment motion practice and the verified complaint establish that the Woods complained to Cashelmara about the noise and dust on: August 7, 2017; September 7, 2017; March 1, 2018; September 3, 2018; October 26, 2018; December 23, 2018; September 6, 2019; November 19, 2019 and December 13, 2019.

{¶ 7} The Association contends that there was no way it could have known that Kish was exceeding the scope of any permits or breaching the terms of the Declaration of Condominium Ownership (the "Declaration") because Kish had not informed the board of precisely what work he was doing in his unit. Accordingly, the Association contends that it had no right to stop Kish's work until it became aware that Kish had exceeded that allowed by his building permits and that he was working in the common areas of the condominium.

{¶ 8} At a meeting in Kish's unit on October 25, 2018, the Bay Village Building Department representative discovered that the scope of work had been misrepresented when Kish obtained his permits. Bay Village then pursued criminal charges against Kish for misrepresenting the scope of the work and they issued a stop work order the next day. At that meeting, Kish represented that asbestos was removed from the pipes as part of the renovation.

{¶ 9} The Association hired Donald Plunkett to provide an expert opinion concerning the remediation of Kish's unit. In his opinion, "[t]he best solution to correct the problem created with the remodeling of [Kish's unit] would be to get the ceiling back in to eliminate the possibility of migration of gypsum dust into [the Woods' unit]." Plunkett recommended that the furnace for the Woods' unit be thoroughly cleaned and the filter changed, but he did not state that the furnace for Kish's unit should be moved from its present location.

{¶ 10} The Association also retained Bureau Veritas to conduct an analysis of the dust that intruded into the Woods' unit. The report did not indicate the presence of asbestos. A subsequent email (Exhibit D to the Motion for Summary Judgment) indicates that, had there been asbestos present, the test would have detected it and the report would have reflected that information.

{¶ 11} In April 2019, Kish received limited approval to install spray-in fire-retardant as a replacement for the drop-in ceiling. There is an email dated October 16, 2019, which states that "Kish completed the installation of fire protection material on the ceiling a week ago." There are also early 2020 emails that confirm that the fire-retardant insulation had been installed. However, there is also an email dated September 6, 2019, inquiring whether "the recent fire-retardant application * * * affect[ed] the dust/debris infiltration to [the Woods'] unit[.]" The exact date or dates when the foam was installed is unclear in the record.

{¶ 12} The Association produced the revised opinion from Plunkett in a letter which concluded that "[t]he foam sp[r]ay has been applied at the top of the

wall and at penetrations through the wall as requested and to my satisfaction. This should complete the separation that was lost when the gypsum board ceiling was removed by the suite owner." Plunkett concluded that "it is my opinion if any more of the white (gypsum [b]oard) dust is found in [the Woods' unit] above it should not be able to come from [Kish's unit]."

{¶ 13} The verified complaint includes notes from Sirow stating that he was unsuccessful in trying to find or replicate the dust issue after the insulation was sprayed. On February 20, 2020, the Cashelmara Board determined that "[t]he Association has expended considerable effort to resolve this issue, evidenced by the e-mails, visits to your unit, conversations and the employment of outside consultation. As a result, the Board has concluded no additional effort or expense will be directed toward this matter, by The Association."

{¶ 14} Further, the Association attached Sirow's affidavit to the motion for summary judgment, which averred "[i]t is my opinion and belief that if there is any dust in the Woods' unit it is not coming from the unit below them. The two units are separated by concrete, steel and flooring."

### A. Initial Action against Kish and SK2 Properties, LLC

{¶ 15} In 2019, shortly after the October meeting, the Association commenced an action in the Cuyahoga County Court of Common Pleas against Kish requesting the issuance of an injunction to prevent further work on the demolition or construction in his unit. On February 12, 2019, the court enjoined Kish from

pursuing all remodeling efforts that had not been approved by the Association or the city of Bay Village.

{¶ 16} The injunction provided that Kish "must commence restoration of the common areas within 30 days of this order. A failure to obtain the approvals to do so and commence the work allows Plaintiff to have the work performed and charge the costs to Defendants." Ultimately, Kish and the Association reached a resolution to the dust infiltration, fire hazard, sound insulation and temperature control which would be to spray fire-retardant insulation on the exposed underside of the concrete floor between Kish's unit and the Woods' unit.

### B. The Action Below

{¶ 17} The Woods found this solution unsatisfactory. In their view, the use of fire retardant failed to ameliorate the conditions of their unit. Further, they contend that they continue to have problems with dust infiltration and temperature swings caused by the placement of the furnace under their unit's floor. In the Woods' view, the remedial measures came much too late and failed to actually restore their unit to its prior condition.

{¶ 18} The Association, by contrast, maintains that while there was likely dust infiltration from the construction in Kish's unit, the holes and ducts have all been inspected and sealed, that the insulative properties of the fire retardant are sufficient to prevent any unreasonable temperature swings in normal usage and that any continued dust intrusion must have its origin somewhere other than Kish's unit.

{¶ 19} The verified complaint sets forth six counts:  Count 1 — Declaratory Judgment; Count 2 — Preliminary and Permanent Injunctive Relief; Count 3 — Breach of Fiduciary Duties; Count 4 — Breach of Contract; Count 5 — Initial Failure to Inspect, Supervise, or Stop the Demolition of [Kish's unit]; Count 6 — Negligence.

{¶ 20} Essentially, all of these counts rely on the contention that the Association wrongfully failed to timely stop Kish's demolition and failed to restore the unit to the condition it was in when Kish started his project.

{¶ 21} Specifically, the Woods point to the following language in the Cashelmara Declaration:

> Except as otherwise provided herein, the management, maintenance, repair, alteration and improvement of the common areas and facilities, including limited common areas and facilities, shall be the responsibility of the Association.

Declaration, Article XIV.

> The Board shall arrange for the prompt repair and restoration of the damaged or destroyed Condominium Property and the Board shall disburse payments to the contractors (including the proceeds of any insurance) engaged in such repair and restoration in appropriate progress payments.

Declaration, Article XVIII(B).

{¶ 22} The Association filed counterclaims alleging that the Woods breached their obligations under the Declaration and Bylaws and that the Woods breached their obligations under R.C. 5311.19.  Much like the several members of the Association, the Association may enforce the terms of the Declaration and Bylaws against the individual members as a contractual right.  Further, R.C. 5311.19(A) provides:

All unit owners * * * shall comply with all covenants, conditions, and restrictions set forth * * * in the declaration, the bylaws, or the rules of the unit owners association, as lawfully amended. Violations of those covenants, conditions, or restrictions shall be grounds for the unit owners association or any unit owner to commence a civil action[.]

{¶ 23} Specifically, the Association alleges that the Woods breached their obligations under the Declaration in failing to obtain waivers of subrogation from their insurance company and in failing to make a claim on their homeowner's insurance policy. The Association specifically contends that "[t]he governing documents clearly state that unit owners will make a claim with their insurer for any damage to the interior of the unit, regardless of the source of the damage[.]"

{¶ 24} The Association joined Kish and Sk2 Properties, LLC as third-party defendants making claims for indemnity and contribution.

{¶ 25} The trial court below granted summary judgment in favor of the Association on both the plaintiff's claims and on the Association's counterclaims. Following the trial court's grant of summary judgment in favor the Association, the Association dismissed, without prejudice, its third-party claims against Kish and SK2 Properties LLC.

## II. Argument and Authorities

{¶ 26} Appellants raise seven assignments of error. Initially, we will address the first and second assignments of error together because they are related.

Assignment of Error No. 1: The trial court erred when it granted Appellee's Motion for Summary Judgment.

Assignment of Error No. 2: The trial court erred when it granted Appellee's Motion for Summary Judgment on Its Counterclaim.

{¶ 27} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and conduct an independent review of the record to determine whether summary judgment is appropriate.

{¶ 28} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, in viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is averse to the nonmoving party, entitling the moving party to judgment as a matter of law.

{¶ 29} On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party has the reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id.*

{¶ 30} The first two counts of the verified complaint are claims for declaratory and injunctive relief. Both of these allegation's rest on the claim that the Association is in breach of its obligations under the Declaration and Bylaws.

Accordingly, the factual predicate of both these claims is the same as the claim for breach of contract and will be considered together below.

{¶ 31} For their breach-of-contract claim (Counts 4 & 5[1] of the verified complaint), the Woods rely on the declaration. "'Condominium declarations and bylaws are contracts between the association and the purchaser and are subject to the traditional rules of contract interpretation.'" *Heba El Attar v. Marine Towers E. Condominium Owners' Assn.*, 8th Dist. Cuyahoga No. 106140, 2018-Ohio-3274, ¶ 9, quoting *Grand Arcade, Ltd. v. Grand Arcade Condominium Owners' Assn.*, 8th Dist. Cuyahoga No. 104890, 2017-Ohio-2760, ¶ 16, citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 35-36, 514 N.E.2d 702 (1987).

{¶ 32} For their breach of fiduciary duty claim (Count 3 of the verified complaint), the Woods rely on the fiduciary duty that the condominium board owes to the not-for-profit corporation that comprises the Association. The condominium association is a nonprofit corporation and the board owes duties under that basis. *O'Loughlin v. Ottawa St. Condominium Assn.*, 6th Dist. Lucas No. L-16-1128, 2018-Ohio-327, ¶ 33. However, while the board owes a duty to the Association, "boards of condominium associations are not charged under the common law with a fiduciary duty to their members." *Kleemann v. Carriage Trace, Inc.*, 2d Dist. Montgomery No. 21873, 2007-Ohio-4209, ¶ 40. *See also Akerstrom v. 635 W. Lakeside, Ltd.*, 2018-Ohio-98, 105 N.E.3d 440, ¶ 18 (8th Dist.).

---

[1] Count 5 is not expressly styled as a breach-of-contract claim, but it rests on allegations that the Association breached its obligations under the Declaration.

{¶ 33} We note that the Woods, insofar as they seek to enforce this duty, seek to do so on behalf of the Association. The derivative cause of action "provides for an action to enforce a corporate right and not a personal right." *Russell v. United Missionary Baptist Church*, 92 Ohio App.3d 736, 739, 637 N.E.2d 82 (12th Dist.1994). The derivative nature of the claim is the reason that plaintiffs filed a verified complaint. Civ.R. 23.1. The derivative action seeks to vindicate the duty owed by the board of the corporation to the corporation as a whole and not a duty that is owed to a particular member or shareholder. The difficulty here is that the sole defendant, the Association, is not a party that owes duties and is properly the plaintiff in a breach of fiduciary duty action. *See Miller v. Gen. Motors Corp.*, 8th Dist. Cuyahoga No. 55200, 1989 Ohio App. LEXIS 1099, at 12-13 (Mar. 30, 1989), quoting *Ross v. Bernhart*, 396 U.S. 531, 538-539, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). No director or officer of the association is named as a party-defendant.

{¶ 34} This case is a demonstration of why such a fiduciary duty cannot be owed to the individual residents. "A fiduciary duty is generally defined as a duty of utmost good faith, trust, confidence, and candor owed by a fiduciary to the beneficiary; a duty to act with the highest degree of honesty and loyalty toward another person and in the best interests of the other person." *DiPasquale v. Costas*, 186 Ohio App.3d 121, 2010-Ohio-832, 926 N.E.2d 682, ¶ 122 (2d Dist.) (quotations and alterations omitted). If the Association owed fiduciary duties to individual residents, then it may well be that the Association would have the duty to act in the best interest of residents who have diametrically opposed interests.

{¶ 35} Thus, the board's obligation is to make the best decisions possible for the long-term management and interests of the Association. The board in this context must be able to balance, for instance, the desire to replace a drywall drop ceiling versus the cost of so doing or under different circumstances. Accordingly, since the verified complaint does not name any director or officer and the only named defendant does not owe the named plaintiff any fiduciary duty, the trial court did not err in granting summary judgment on this claim.

{¶ 36} The Woods also include a claim for breach of the ordinary duty of negligence. The basis of this duty is not clear. The claim is against the Association. Given that the Association already has its obligations defined in the Declaration and Bylaws, the additional imposition of a duty of negligence is unwarranted. Where a relationship is defined by contract obligations, those obligation prevent the application of a generalized claim for negligence because the parties have already defined the scope of their obligations. *See Garofoli v. Whiskey Island Partners Ltd.*, 2014-Ohio-5433, 25 N.E.3d 400, ¶ 22 (8th Dist.) ("Because all of the alleged duties in this case arise out of the contract * * * the trial court properly granted summary judgment to [defendant] on the negligence claim."). The trial court did not err in determining that the plaintiffs could not maintain a separate cause of action for negligence because the Declaration and Bylaws establish the obligation of the Association to maintain and repair the common areas.

{¶ 37} Accordingly, the Woods' various claims reduce to a claim for breach of contract. The Woods contend that the trial court erred in granting judgment on these claims based on a series of specific alleged breaches.

### A. Duty to Repair Ceiling in Kish's Unit and Duty to Investigate, Supervise, and Stop the Unauthorized Demolition in Kish's Unit

{¶ 38} The Woods allege that the Association failed to discover, in a timely fashion, that Kish was breaching the terms of the Declaration and, after discovering that Kish had caused his contractors to remove the drop ceiling and appropriate a common area to make it part of his personal unit, the Association's efforts to remediate the damage were inadequate.

{¶ 39} "Condominium declarations and bylaws are contracts between the association and the purchaser and are subject to the traditional rules of contract interpretation." *Grand Arcade, Ltd. v. Grand Arcade Condominium Owners' Assn.*, 8th Dist. Cuyahoga No. 104890, 2017-Ohio-2760, ¶ 16, citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 35-36, 514 N.E.2d 702 (1987). Specifically, the Woods point to language in the Declaration requiring the Association to "arrange for the prompt repair and restoration of the damaged or destroyed Condominium Property[.]" Declaration, Article XVIII(B).

{¶ 40} There does not appear to be any dispute in this case that Kish did exceed the scope of his building permits and conducted demolition of the common area of the condominium. Nor does there appear to be any dispute but that the Association has the authority to cause Kish to repair the ceiling himself for the Association to have the repairs completed and bill Kish for the work.

{¶ 41} Instead, the dispute centers around the Associations' claims that it acted as soon as it could through the appropriate channels and that the solution the Association chose, spray-in-foam, is adequate to restore the properties of the drop-in ceiling that were lost during Kish's remodeling project. The Association further maintains that, while it may be preferable to restore the destroyed drop ceiling, such a solution is cost prohibitive.

{¶ 42} According to the Association, they investigated as quickly as they could and pursued all reasonable legal avenues of enforcement against Kish's remodeling project. The difficulty, in the view of the Association, is that some measure of remodeling is acceptable for a resident to undertake without obtaining board approval and that Kish had obtained building permits from the city of Bay Village. However, according to the verified complaint, "Plaintiff L. Wood notified Sirow in or around September 2017 that the ceiling in [Kish's unit] was being removed. Sirow responded that [Kish's unit] had a Bay Village building permit to demolish and there was nothing he could do about it."

{¶ 43} Civ.R. 56 expressly permits a court to consider pleadings. In any event, the verified complaint included a jurat swearing that the contents of the complaint were true and accurate. Accordingly, the verified complaint is the equivalent of an affidavit. R.C. 2319.02 ("An affidavit is a written declaration under oath, made without notice to the adverse party."). Thus, the Woods filed a sworn statement that Cashelmara was notified that Kish was destroying common areas in 2017. Furthermore, a letter, dated September 3, 2018, which is attached to Timothy

Wood's affidavit in the Woods' opposition to Cashelmara's Motion for Summary Judgment states that the ceiling of Kish's unit must be replaced. The letter implies the destruction of the ceiling was a known fact. It was not until nearly two months later when the Association and Bay Village stopped the construction project of Kish.

{¶ 44} The Association contends that the spray-in-foam along with the other work done to seal the penetrations in the floor reasonably prevents any infiltration of dust from Kish's unit to the Woods' unit. Accordingly, further expenditures on the part of the Association would constitute an unnecessary expense for the other members of the Association.

{¶ 45} The affidavit attached to the Woods' opposition to Cashelmara's motion for summary judgment averred that the dust continued to "invade" the unit after the installation of the spray-in-foam. Cashelmara has produced the affidavit of Sirow who opined that any additional dust infiltrating the Woods' unit must come from a source other than Kish's unit.

{¶ 46} This dispute is material. If the remediation efforts of the Association are sufficient to restore the separation between the Woods' and Kish's units, then the Association may well have properly restored the common area. However, if the remediation efforts did not restore the separation between the units, a reasonable factfinder may indeed determine that the Association failed to restore the common area that Kish had destroyed. Such a dispute "can be resolved only by the trier of fact." *Turner v. Turner*, 67 Ohio St.3d 337, 342, 617 N.E.2d 1123 (1993). Accordingly, we sustain these assignments of error insofar as the record establishes

a dispute of material fact exists concerning whether the fire-retardant foam provides an adequate substitute for the false ceiling and whether the Association was dilatory in investigating Kish's demolition.

### B. Duty to Disclose the Release of Asbestos

{¶ 47} The record reflects that Kish stated that he had removed asbestos from the property. However, testing casts doubt on whether any asbestos was, in fact, removed since there was no asbestos found in the tested dust. Other than Kish's statement that asbestos was present, there is no evidence that asbestos was removed from Kish's unit.

{¶ 48} In any event, the burden rests on the Woods to show harm arising from the alleged failure to disclose the alleged release of asbestos. In the absence of any evidence that asbestos was ever in the structure, there is no evidence of any possible harm caused by the alleged failure to disclose. Accordingly, appellants have not shown that the trial court erred with respect to this allegation.

### C. Woods' Duty to Make a Claim on Their Insurance Policy and to Secure a Waiver of Subrogation Rights

{¶ 49} The Association's counterclaims contend that the Woods failed to make a claim on their insurance policy and failed to ensure that their insurance policy contained a waiver of the insurance company's right to subrogate any claim that the Woods may have against the Association.

{¶ 50} Nothing in the Declaration expressly requires that the Woods submit such a claim to their insurance company. Although the Declaration requires each member to obtain a homeowner's policy, there is no express requirement that a

member of the Association make a claim on the policy. Appellee contends that "[c]combined, the clear mandate of these provisions is that a unit owner will make a claim under its own insurance policy in the event of damage to the interior of the unit." However, no quotation to the alleged "clear mandate" is provided. Instead, this "clear mandate" is implied in the Declaration in a combination of the requirement that each member must insure their own unit and that the Association's policies only cover common areas.

{¶ 51} In any event, the availability of an insurance policy typically does not establish a defense in favor of an alleged tortfeasor or a party who is alleged to have breached a contract. *See Vogel v. Wells*, 57 Ohio St.3d 91, 101, 566 N.E.2d 154 (1991).

{¶ 52} The Association produced evidence that the Woods had failed to secure a waiver of subrogation rights on the part of the insurance company but provides no evidence that the failure to obtain this waiver has caused the Association any damages. Accordingly, we find that the court erred in granting summary judgment in favor of the Association on the counterclaims.

> Assignment of Error No. 3: The trial court erred when it ruled on Appellee's Motion for Summary Judgment on Its Counterclaim despite admissions that were deemed admitted by rule and not withdrawn

{¶ 53} The trial court has discretion — upon motion by a party — to permit the withdrawal or amendment of Civ.R. 36(A) admissions. *Id.* at ¶ 15. Civ.R. 36 does not specify that a formal motion is required nor does the rule identify a time when the motion must be filed. *Balson v. Dodds*, 62 Ohio St.2d 287, 290, 405

N.E.2d 293 (1980), fn. 2. Courts have accepted, absent a written or oral motion to withdraw, various challenges to the truth of an admission as implicit motions to withdraw. *C.S.J. v. S.E.J.*, 8th Dist. Cuyahoga No. 108390, 2020-Ohio-492, ¶ 12.

{¶ 54} Here, appellants contend that the trial court erred because "the requested admissions deemed admitted by rule for Cashelmara's failure to respond were also entirely dispositive of the [counterclaims]." According to appellants, the requests were propounded on May 10, 2021, with responses due by June 7, 2021. On June 11, 2021, appellants filed "Notice of Defendant's Admission of Requests for Admission Due to Non-Response." That same day, appellee filed a notice indicating that the answers to the requests for admission had now been provided and that the original failure to include them was an accidental oversight.

{¶ 55} Appellants argues that the trial court erred in determining that the discovery responses deemed the notice of admission moot. Appellants provide no argument or evidence that appellee's answers, being untimely by four days, prejudiced appellants' ability proceed with the case. Appellants have not shown that the trial court abused its discretion. We overrule this assignment of error.

> Assignment of Error No. 4: The trial court erred when it denied Appellants' request for leave to move for summary judgment.

{¶ 56} "[A] trial court has discretion to grant or deny leave to file for summary judgment after the matter has been scheduled for pretrial or trial, and will not be reversed without showing that discretion was abused." *Eberhard Architects,*

*L.L.C. v. Schottenstein, Zox & Dunn Co., L.P.A.*, 8th Dist. Cuyahoga No. 102088, 2015-Ohio-2519, ¶ 13.

{¶ 57} Appellants argue that the trial court erred in denying leave to file a motion for summary judgment because appellants were entitled to judgment. However, as discussed above, the record shows a dispute of fact concerning whether the spray-foam insulation remediated the problem and whether the Association intervened in a timely fashion. As a result, the Woods cannot show that the trial court abused its discretion in denying leave to file a motion for summary judgment and we overrule this assignment of error.

> Assignment of Error No. 6: The trial court erred when it prematurely ruled on Appellee's Motion in Limine Regarding Asbestos/Respiratory Issues.

{¶ 58} Here, appellants contends that the trial court erred in granting a motion in limine. However, that motion was for a trial that never happened. Appellants cannot show any prejudice arising from the trial court's resolution of that motion in limine. Accordingly, we overrule this assignment of error.

> Assignment of Error No. 7: The trial court erred when it arbitrarily struck Appellants' Memorandum in Opposition to Third-party Defendants' Motion for Summary Judgment.

{¶ 59} The entirety of appellant's argument on this assignment follows:

> The trial court stuck the Woods' Memorandum in Opposition to Kish's Motion for Summary Judgement with reference to "JE 6/23/21 – which bears no relationship to the Woods' Memorandum in Opposition to Kish's Motion for Summary Judgment." (See R. 77 (striking Cashelmara's Supplemental Brief in Opposition to Kish's Motion for Summary Judgment).) This was clear, reversible error.

**{¶ 60}** This is clearly a typographical error in the journal entry. The journal entry referenced does indeed order that a supplemental brief of Cashelmara be stricken and the description in a separate journal entry does indicate that a brief filed by the Woods was stricken. However, the public docket contains Woods' brief while the Cashelmara brief was removed. This indicates that the inclusion of the language in the description of the Woods brief is merely a clerical, and thus harmless, error. As the case is remanded based on our resolution of the first two assignments of error, we sustain this assignment of error, in part.

**{¶ 61}** For the foregoing reasons we sustain appellant's first two assignments of error and seventh assignment of error, in part. We overrule appellant's remaining assignments of error and remand this case to the trial court for further proceedings consistent with this opinion.

It is ordered that appellants and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
EMANUELLA D. GROVES, J., CONCUR