[Cite as *Heba El Attar v. Marine Towers E. Condominium owner's Assn.*, 2018-Ohio-3274.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 106140

## HEBA EL ATTAR, ET AL.

### PLAINTIFFS-APPELLANTS

vs.

## MARINE TOWERS EAST CONDOMINIUM OWNERS' ASSOCIATION, ET AL.

### DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-873728

**BEFORE:** Stewart, J., Kilbane, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** August 16, 2018

**ATTORNEYS FOR APPELLANTS**

Steven M. Ott
Lindsey A. Wrubel
Jacqueline Ann O'Brien
Ott & Associates, Co., L.P.A.
1300 East Ninth Street, Suite 1520
Cleveland, OH 44114

Jonathan J. Hartman
Midland Credit Management
P.O. Box 30968
Middleburg Heights, OH 44130


**ATTORNEYS FOR APPELLEES**

Katie Lynn Zorc
Andrew J. Dorman
Reminger Co., L.P.A.
101 Prospect Avenue, West, Suite 1400
Cleveland, OH 44115

MELODY J. STEWART, J.:

{¶1} In the winter of 2015, there was unexpected damage to the heating, ventilation, and cooling ("HVAC") system at Marine Towers East Condominiums that rendered the system unable to heat and cool some units. Marine Towers temporarily restored heat to the affected units by providing space heaters that required installation of a dedicated electrical line. This project cost approximately $200,000 and was paid for entirely by a special assessment imposed on all unit owners. Defendants-appellees Marine Towers East Condominium Owners' Association, Inc. and its board of managers (the "Association") subsequently learned that it would cost more than $4 million to replace the HVAC system for the building housing its condominium units. The Association did not have a reserve fund to pay for extraordinary expenses, so it gave notice to its 137 unit owners that they would have to pay a special assessment to cover the cost of repair.

{¶2} Plaintiffs-appellants Heba El Attar, Dennis Grabowski, Dolores Mlachak, Kevin McDowell, Claudia Gruchalla, and Robert Monahan, owners and titleholders of units at Marine Towers, brought this action against the Association seeking a declaration of their duty to pay the assessment, claiming that the Association was liable for breach of contract and claiming also that the Association breached its fiduciary duty by failing to establish and maintain a reserve fund as required by the terms of the association's governing documents and R.C. Chapter 5311. The owners also sought injunctive relief to prevent the Association from collecting special assessments and a declaratory judgment relating to reserve funds. The Association answered the complaint and filed a motion for judgment on the pleadings arguing that the declaration did not require it to establish a reserve fund and that the statutory duty to establish a reserve fund had been waived by a majority of the owners who voted on an annual basis to pay for extraordinary

expenses by way of special assessment. The trial court granted the motion without opinion, stating only that the owners "can prove no set of facts in support of their claims that would entitle them to relief." The court dismissed the complaint in its entirety. The owners' two assignments of error collectively challenge the judgment. The owners claim that the trial court erred 1) by granting the Association judgment on the pleadings and 2) in its interpretation of the Association's governing documents and R.C. 5311.081.

{¶3} This case centers on the issue of whether the Association had the duty to establish a reserve fund as alleged by the plaintiff-owners.

{¶4} R.C. 5311.081(A) provides:

Unless otherwise provided in the declaration or bylaws, the unit owners association, through the board of directors shall do both of the following:

(1) Adopt and amend budgets for revenues, expenditures, and reserves in an amount adequate to repair and replace major capital items in the normal course of operations without the necessity of special assessments, provided that the amount set aside annually for reserves shall not be less than ten percent of the budget for that year unless the reserve requirement is waived annually by the unit owners exercising not less than a majority of the voting power of the unit owners association;

(2) Collect assessments for common expenses from unit owners.

{¶5} The statute requires a condominium association to include in its annual budget an "adequate" amount for reserves — at least ten percent of the total budget — to ensure that major capital items can be repaired and replaced without the need of special assessments. The statute, however, provides a mechanism to vote around this requirement: so long as a majority of unit owners annually vote to do so, they may waive the reserve fund requirement for that particular year.

{¶6} By its own terms, R.C. 5311.081(A) applies only to instances where a condominium's declaration or bylaws do not "otherwise provide[ ]" for reserves.  In such cases, the statute operates as a gap-filling provision to address reserve requirements when an association's bylaws or other governing documents do not.  The statute would also serve to establish a statutory baseline for what would constitute a reasonable reserve under the circumstances.  But where an association's declaration or bylaws specifically contemplate the establishment of a reserve fund, the statute does not apply.

{¶7} The "Declaration of Condominium Ownership for Marine Towers East Condominium" and the "By-Laws of Marine Towers East Condominium Owners' Association, Inc." are the condominium's governing documents.[1]   Article V, Section 3 of the bylaws, titled "Reserve for Contingencies and Replacement," provides:

> The Association shall build up and maintain a reasonable reserve for contingencies and replacement.  Extraordinary expenditures not originally included in the annual estimate which may be necessary for the year, shall be charged first against such reserve.

{¶8} Further, Article V, Section 2 of the bylaws requires that the Association include reserve funding as part of the "estimated cash requirement" to be assessed against each unit owner as part of the annual budget:

> [E]ach year * * * the Association shall estimate the total amount necessary to pay the cost of wages, materials, insurance, services and supplies which will be required during the ensuing calendar year for the rendering of all services, together with a reasonable amount considered by the Association to be necessary for a reserve for contingencies and replacements * * *.

---

[1] In their arguments, the parties refer to the "declaration" as the governing document that appears to be a collective reference to both the declaration and the bylaws.  The content to which they refer, however, is located entirely in the bylaws.  This clarification does not impact our analysis.

{¶9} "Condominium declarations and bylaws are contracts between the association and the purchaser and are subject to the traditional rules of contract interpretation." *Grand Arcade, Ltd. v. Grand Arcade Condominium Owners' Assn.*, 8th Dist. Cuyahoga No. 104890, 2017-Ohio-2760, ¶ 16, citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 35-36, 514 N.E.2d 702 (1987). The plain language of the bylaws required the Association to establish a reserve to be used for contingencies and replacement.

{¶10} The Association concedes that it did not establish the reserve, but maintains that it was not required to do so. It argues that the term "reserves" as used in the bylaws, does not refer to a separate fund, but instead, "simply means money" or "another part of the budget, not a mandate for a separate reserve fund or a reserve requirement * * *." We reject this argument.

{¶11} The bylaws' language that the Association "shall build up and maintain a reasonable reserve for contingencies and replacement" is clear and unambiguous, requiring no interpretation or construction. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55, 544 N.E.2d 920 (1989). Although the bylaws do not use the word "fund," the language requiring the Association to "build up and maintain" permits no other conclusion than that the Association create an ongoing reserve fund or account separate from its yearly line-item budget. The ordinary meaning of the words "build up" means to establish something; the word "maintain" means to cause or enable something to continue. Taken together, these words require the establishment and maintenance of what could only be described as a reserve fund or a reserve account. Our conclusion is reinforced by language in the bylaws providing that if there is a shortfall in collecting "actual expenditures plus reserves" at the end of the budget year, the owners are required to make up the shortfall in the next calendar year. *See* Article V, Section 2. By differentiating reserves from "actual expenditures," the bylaws make it clear that the reserve

is more than just an item of the budget and is a collection of money separate and apart from money allocated to pay for routine services and expenditures.

{¶12} The Association's bylaws specifically state that the reserve fund is to be used for "extraordinary expenditures"; that is, expenses *not included in the annual budget estimate*. It is for this reason that the Association's argument that it could maintain reserves as "another part of the budget" fails. By definition, extraordinary expenditures — and no one disputes that the HVAC replacement is an extraordinary expenditure — are items for which there is no budget. And even if we were to accept the Association's argument that it was not required to establish a reserve fund, but instead merely maintain reserves as "just * * * another part of the budget," the fact remains that the Association offered no evidence to show that the budget contained any amount of money in reserve to pay for extraordinary expenditures.

{¶13} The Association also argues that the bylaws permit it to impose special assessments as a means of addressing extraordinary expenditures without having to resort to the use of cash reserves. While it is true that Article V, Section 3 of the bylaws provides "[i]f said 'estimated cash requirement' proves inadequate for any reason * * * the same shall be assessed to the owners according to each owner's percentage of ownership," that provision does not supersede the reserve requirement. In fact, the bylaws strictly prohibit special assessments as an alternative to using reserve funds. Article V, Section 3 of the bylaws states that "[e]xtraordinary expenditures * * * shall be charged first against such reserve." This language is consistent with the requirement that a reserve fund be established for use in paying for extraordinary expenditures.

{¶14} The Association's alternate or additional claim that it waived the reserve requirement by holding an annual vote to do so pursuant to R.C. 5311.081(A) is also unavailing.

As previously discussed, R.C. 5311.081(A) does not apply to this case because the bylaws otherwise provide for establishing a reserve fund. And even if we were to find R.C. 5311.081(A) applicable, there is an inconsistency between the bylaws and the statute, and the bylaws specifically state that "all inconsistencies between or among permissive provisions of any statute and any provision of the Declaration and these By-Laws, shall be resolved in favor of the Declaration and those By-Laws[.]" By-Laws, Article IV, Section 8. The Association has not directed us to any language in either the declaration or the bylaws that would allow it to waive the mandatory reserve requirement. In order to waive the reserve requirement, the Association would have to formally amend its bylaws. *See* Declaration of Condominium Ownership for Marine Towers East Condominium, Section 9. There is no indication that the Association sought to amend its bylaws accordingly.

{¶15} When reviewing a Civ.R. 12(C) judgment on the pleadings issued in a declaratory judgment action, we look to see whether a "justiciable issue" exists on a legal interest or a right, and whether there is a genuine "controversy" between parties who have adverse legal interests. *Woodson v. Ohio Adult Parole Auth.*, 10th Dist. Franklin No. 02AP-393, 2002-Ohio-6630, ¶ 7. These are questions of law. *Peterson v. Teodosio*, 34 Ohio St.2d 161, 166, 297 N.E.2d 113 (1973).

{¶16} We find as a matter of law that the Association's governing documents required it to " build up and maintain a reasonable reserve" to pay for extraordinary expenditures that are not included in the Association's annual budget. We also find that because the Association's governing documents provided for a reserve fund, R.C. 5311.081(A), which applies only in the event an association's declarations or bylaws are silent on the issue, is inapplicable. The court therefore erred by granting judgment on the pleadings and dismissing the owners' complaint.

**{¶17}** Judgment reversed and case remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellants recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

MARY EILEEN KILBANE, P.J., CONCURS;
LARRY A. JONES, SR., J., CONCURS IN JUDGMENT ONLY