[Cite as *Bigham v. Deer Run Owners Assn.*, 2024-Ohio-5233.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| PAMELA K. BIGHAM TRUSTEE ET AL. | : | |
| | : | |
| Appellant | : | C.A. No. 30124 |
| | : | |
| v. | : | Trial Court Case No. 2019 CV 04914 |
| | : | |
| DEER RUN OWNERS ASSOCIATION ET AL. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Appellees | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 1, 2024

. . . . . . . . . . .

SUE SEEBERGER, Attorney for Appellant

BRIANNA M. PRISLIPSKY & VINCENT P. ANTAKI, Attorneys for Appellees

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Plaintiff-Appellant Pamela K. Bigham, individually and as trustee of the Pamela K. Bigham 2013 Trust, appeals from an order of the Montgomery County Court

of Common Pleas that granted partial summary judgment in favor of Defendant-Appellee Deer Run Owners Association (the Association) and denied Bigham's motion for summary judgment. The court later found in favor of the Association at trial on the remaining claims. For the reasons that follow, the judgment of the trial court will be affirmed in part, reversed in part, and remanded.

## I.    Facts and Procedural History

{¶ 2} In 2012, Bigham purchased a house on Doe Crossing, a cul-de-sac in a Centerville neighborhood. The residence is located within the Deer Run Community and is part of the Association. The Association is governed by an extensive declaration, a contract which details the duties and responsibilities of the homeowners and the Association.

{¶ 3} Almost as soon as she moved in, Bigham began reporting problems with her home to the Association, which she believed were caused by water issues. She informed the Association that there were problems (among other things) with pavers leading to her front door; water erosion alongside and underneath her deck; exposed roots on the east side of her property; overflowing gutters; odor of mildew in the crawl space; water pooled in the crawl space; kitchen floor warping; tiles buckling; erosion on the south side of the property; improper draining due to debris; separation of a fireplace and a wall; separation of ceiling walls; mortar issues; and warping of her deck.

{¶ 4} Between 2013 and 2022, the Association spent tens of thousands of dollars to remediate the issues.   Among other things, it replaced Bigham's deck, installed a new sump pump, replaced her gutters, and performed yard grading and downspout work.

Despite the work done, Bigham believed there was more the Association was required to do under the declaration. On June 9, 2017, Bigham filed suit. The case was voluntarily dismissed pursuant to Civ.R. 41 on November 2, 2018, and re-filed on October 22, 2019. The latter complaint alleged six counts: One – statutory breach of contract; Two – breach of contract; Three – breach of fiduciary duty; Four – permanent injunction (ordering the Association to perform maintenance and repair surrounding lawns to prevent continued damage to her home); Five – negligent infliction of emotional distress; and Six – negligence. Bigham later dismissed Count Five.

{¶ 5} In early 2023, Bigham filed a motion for partial summary judgment on Count One – statutory breach of contract under R.C. 5311, and Count Two – breach of contract (the declaration). Thereafter, the Association filed its memorandum in opposition to Bigham's summary judgment motion and its own cross-motion for summary judgment. Bigham also filed a reply brief.

{¶ 6} In her motion for summary judgment, Bigham argued that the Association had duties under R.C. 5311.14(A) to maintain and repair "common elements." She further asserted that, under the declaration, the Association had the duty to maintain "common elements" and "limited common elements" and to pay for the work. She also alleged that the Association had not taken the appropriate steps to maintain and repair the common and limited common elements.

{¶ 7} One of her chief contentions was that the house's crawl space is a foundation – a common element – and therefore it was the Association's duty to maintain and repair it. Similarly, she believed that the repair and replacement of her deck was the

Association's duty because it was a limited common element.

{¶ 8} The Association moved for summary judgment on Bigham's claims. As to Counts One and Two, it argued that Bigham could not prove her breach of contract claims. The Association further asserted that Bigham's breach of fiduciary duty claim failed because it had not breached any duty (Count Three). According to the Association, Bigham was not entitled to a permanent injunction, either, because she could not prevail on the merits, third parties would not be harmed, and the public interest would not be served (Count Four). Finally, as to Count Six, it stated that the negligence claim failed as it was precluded by the economic loss doctrine.

{¶ 9} On November 7, 2023, the trial court granted the Association's motion for summary judgment on Count One (breach of statutory duty) and Count Six (negligence). It also granted partial summary judgment on Count Two as to Bigham's deck. On the other hand, the court found that there were genuine issues of material fact on (part of) Count Two, Count Three, and Count Four, necessitating a trial.

{¶ 10} The case proceeded to a bench trial on November 14, 15, and 20 and December 19 and 20, 2024, at which the issues were whether the Association had breached the declaration by not remediating Bigham's crawl space, whether it had breached its fiduciary duty, and whether injunctive relief should be granted. Both sides filed post-trial memorandums. Ultimately, the trial court ruled in favor of the Association and stated that the weight of the evidence did not support Bigham's claims. She was further ordered to pay all court costs.

{¶ 11} Bigham has filed a timely appeal and raises two assignments of error.

## II.      Breach of Contract

**{¶ 12}** In her first assignment of error, Bigham argues that the trial court erred when it denied her motion for partial summary judgment for breach of contract under the declaration. Specifically, she alleges that the court erred when it found a genuine issue of material fact as to whether a crawl space is a type of foundation, to be determined by the credibility of the experts at trial.

**{¶ 13}** Pursuant to Civ.R. 56(C), a movant is entitled to summary judgment when that party demonstrates that there is (1) no issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the non-moving party. *Rhododendron Holdings, LLC v. Harris*, 2021-Ohio-147, ¶ 22 (2d Dist.).

**{¶ 14}** "The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment." *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66 (1978). Once the moving party has satisfied its burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The nonmoving party cannot rely upon the mere allegations or denials in the pleadings but must give specific facts showing that there is a genuine issue for trial. Civ.R. 56(E). *Accord Geloff v. R.C. Hemm's Glass Shops, Inc.*, 2021-Ohio-394, ¶ 14 (2d Dist.). When the standard is met, summary judgment must be awarded as a matter of law.

**{¶ 15}** We review the trial court's ruling on a summary judgment motion de novo.

*Martcheva v. Dayton Bd. of Edn.,* 2021-Ohio-3524, ¶ 35 (2d Dist.).

{¶ 16} The resolution of this assignment of error is dependent on the interpretation of the Deer Run Owners Association declaration, a contract between the homeowners and the Association. Where the question before the court on summary judgment concerns contract interpretation, "summary judgment may be granted when its words convey a definite and precise meaning absent any ambiguity." *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992). But, where language is susceptible to differing but reasonable interpretations, the meaning of the words become an issue of fact and summary judgment is not appropriate. *Id.*; *Wittstein v. Wittstein*, 2006-Ohio-6707, ¶ 8 (12th Dist.) ("Contract terms are ambiguous where the language is susceptible to two or more reasonable interpretations."). "Resolving the meaning of ambiguous terms in a contract is a matter of factual determination for the fact-finder." *Tera, LLC. v. Rice Drilling D, LLC.*, 2024-Ohio-1945, ¶ 19; *Campbell v. Lake Washington Condominium Bd. of Managers*, 1996 WL 535317, *2 (2d Dist. Sept. 20, 1996).

{¶ 17} Bigham believes the declaration provides that the Association is responsible for repairing her house's crawl space because it is a "common element." The pertinent sections of the declaration state:

Article VIII – Common and Limited Common Elements

D. Maintenance and Repair

1. Association Responsibility. The Association shall maintain and repair the Common Elements and the Limited Common Elements, other than as set out in the previous article as the Unit Owners' responsibility.

. . .

Article VIII – Common and Limited Common Elements

A. Description

1. Common Elements. All property not defined as a Unit shall be part of the Common Elements, including, but not limited to:

a. all buildings

b. *foundations*;

c. main and supporting walls;

d. trees, lawns, gardens, and shrubbery;

e. pavement, including walking pathways, except for those portions which are defined as Limited Common Element or owned and maintained by the City of Centerville

f. fences;

g. common walks and walk lights, not to include the Unit entrance walks which are defined as Limited Common Element;

h. common driveways and parking areas, except for driveways leading to the garages, which are defined as Limited Common Element;

i. wires, conduits, utility lines and ducts now or hereinafter situated on the Condominium Property;

j. in general, all parts of the Condominium Property situated outside the boundary of the individual Units.

(Emphasis added.) According to the declaration, the Association is responsible for

maintaining and repairing **foundations**. There is a dispute, however, as to whether a crawl space fits that definition.

**{¶ 18}** In her motion for summary judgment, Bigham attached a report that stated: "The condo, which was built in 1989, is a 1-1/2 story, 2347 square foot, masonry/frame structure, with vaulted ceilings, and a loft-type upper level, built over a ***crawl-space structural foundation . . .*** Thus, the condo is clearly supported by a foundation that is most commonly known as a '***crawl space foundation***' " (Emphasis added.) Bigham QEI Report, at 1-2. Conversely, the Association argued that the crawl space is simply that – a *space*. Its expert stated that the "home is supported by concrete block foundation walls that enclose a partial depth crawlspace[.]" Association's Property Evaluation Report at 9.

**{¶ 19}** Based on the dueling evaluations of the crawl space, and because the declaration does not define "foundation" in any way, there appears to be ambiguity as to the meaning of the word, and then about whether the crawl space really is a foundation. As evinced by the differing opinions of the experts, the word has two reasonable interpretations and therefore there is an issue of fact as to the parties' intent. *See Career & Tech. Assn. v. Auburn Vocational School Dist. Bd. of Edn.*, 2014-Ohio-1572, ¶ 18 (11th Dist.). *Accord Wells Fargo Bank, N.A. v. LaSalle Bank Natl. Assn.*, 643 F.Supp.2d 1014, 1030 (S.D. Ohio 2009) (summary judgment denied due to ambiguity in the interpretation of the word "organization"). The trial court did not err in denying Bigham's motion for summary judgment.

**{¶ 20}** But even assuming for the sake of argument that there was an error, it was harmless. The Ohio Supreme Court has held that the harmless error doctrine should be

applied when an appellant challenges the denial of a motion for summary judgment after the case has gone to trial on the same issues. *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150 (1994), syllabus. So, "if a trial court erroneously denies a motion for summary judgment but the same issues are fully litigated at trial, substantial justice would be better served by relying on the trial verdict rather than relying on the curtailed presentation of evidence used in summary judgment proceedings." *Chieffo v. YSD Industries*, 2004-Ohio-2481, ¶ 24 (7th Dist.). As to this, the assignment of error is overruled.

{¶ 21} The trial court did not address Bigham's other argument from her motion for summary judgment pertaining to this issue: that the crawl space should be considered a common element because it "is situated outside the boundary" of her unit. Second Amended Motion for Partial Summary Judgment at 9. According to Article VII of the Declaration – Units and Unit Owners' Association, "[e]ach of the Units . . . shall consist of all the space bounded by the undecorated surfaces of the perimeter walls, floors, and ceilings of each Unit to constitute a complete enclosure of space." Declaration Section (A) Composition. Article VII then lists specific things that are part of the unit (and thus, the owners responsibility) like "decorated surfaces, including paint, lacquer, varnish, wallpaper, tile and any other finishing materials applied to the interior surface of the perimeter walls, floors, and ceilings;" windows and doors; interior walls, floors, and ceilings; and all "plumbing, electrical, heating, cooling and other utility service lines, pipes, wires, ducts . . . which are located within the bounds of the Unit[.]" Declaration Section (A) Composition, subsections 1-6.

{¶ 22} According to the plain language of the declaration, the owner of a unit is

responsible for the maintenance and repair of *inside-the-walls* or *inside-the-house* items. The crawl space does not fit that definition. It is the *space* beneath – "situated outside the boundary of the individual unit." Therefore, the responsibility of maintaining and repairing the crawl space falls to the Association as "[a]ll property not defined as a Unit shall be part of the Common Elements[.]" As to this, we conclude that the trial court erred by granting summary judgment in favor of the Association, and this part of the assignment of error is sustained.

{¶ 23} Bigham also asserts in her first assignment that the Association breached the declaration by not maintaining and repairing surface water drainage on surrounding lawns as these are common elements. It is her contention that water draining from these lawns has damaged her deck.

{¶ 24} This argument, while raised below, seems to have been misinterpreted by the trial court. Instead of ruling on whether the Association needed to work on the surrounding lawns, it construed the argument to be about whether the Association must repair Bigham's deck. The trial court correctly found that, as a Limited Common Element, the deck was Bigham's responsibility. She does not argue that, though. She believes the Association should fix the drainage issues with the yards surrounding hers.

{¶ 25} The declaration is clear that common elements, such as lawns, and "in general, all parts of the Condominium Property situated outside the boundary of the individual Units," must be maintained and repaired by the Association. That means the drainage of the lawns of the surrounding properties is the responsibility of the Association. There is evidence in the record, however, that work had been done to correct the other

yards. For instance, according to Bigham's affidavit, in 2015, the Association agreed to grade and excavate the lawns surrounding her Unit and remove her deck. In May 2016, Buckeye EcoCare did work on the lawns and yard north of her Unit. Then, in November 2016, the Association hired American Pride Lawn and Landscaping to perform more work in the surrounding yards to mitigate water drainage issues. Bigham Affidavit at ¶ 65, 76, 81. According to Bigham, though, the work did not alleviate the problems.

{¶ 26} While the Association is responsible for the maintenance and repair of the lawns, it is unclear whether the work that was done is sufficient to meet the Association's responsibility. This determination is best left for the trial court to decide. As to this, the assignment of error is sustained.

### III. Statutory violations and negligence

{¶ 27} In her second assignment of error, Bigham contends that the trial court erred when it granted the Association's motion for summary judgment on her claims for statutory violations under R.C. 5311.14(A) and negligence.

<u>Statutory Breach</u>

{¶ 28} She first argues that the trial court erred when it found she could not establish a claim against the Association under R.C. 5311.14(A) because it is superseded by her contractual claim.

{¶ 29} According to the statute, "***[u]nless provided otherwise in the declaration***, damage to or destruction of all or any part of the common elements of a condominium property shall be ***promptly*** repaired and restored by the board of directors of the unit

owners association[.]" (Emphasis added.) R.C. 5311.14(A).

{¶ 30} The declaration in this case is similar to the statute and imposes a duty to repair and maintain. In Article VIII, Section D, Maintenance and Repair, the declaration notes that "[t]he Association shall maintain and repair the Common Elements and the Limited Common Elements, other than as set out in the previous Article as to Unit Owners' responsibility[.]" The biggest difference between R.C. 5311.14(A) and the declaration is that the statute adds the term "promptly," a timing or temporal element.

{¶ 31} The trial court dismissed Bigham's statutory breach claim, adopting the Association's argument that "the language and terms of the Declaration supersede any duties set forth in R.C. 5311.14 because the statute clearly states that the duty set forth in the statute is applicable 'unless provided otherwise in the declaration.' . . . The statute only imposes statutory duties in the event that the Declaration is absent such language." Summary Judgment Decision at 11. There is caselaw, however, supporting the conclusion that a plaintiff can bring both statutory and contractual breach claims.

{¶ 32} In *Roth v. Tokar Tower Office Condominiums Unit Owners' Assn., Inc.*, 2023-Ohio-279 (9th Dist.), the plaintiff-appellant filed suit against the condo association after his unit flooded because of a burst pipe. The complaint alleged, among other things (and like this case), negligence, breach of fiduciary duty, breach of contract, and violation of statutory duty imposed under R.C. 5311.14. The courts at both the trial and appellate levels found it proper to decide the contractual *and* statutory breach claims. *See also Koslowski v. Co-Moor Townhouse Idlewood S. Condominium #5 Assn., Inc.*, 2012-Ohio-3254 (8th Dist.) (plaintiff-appellee brought multiple claims against the condo association

after it refused to fix cracks that were found in the concrete slab on which her unit rested; the appellate court held that actions against a condo association could be both statutory and contractual in nature); *Behm v. Victory Lane Unit Owners' Assn., Inc*., 133 Ohio App.3d 484, 487 (1st Dist. 1999) ("Thus, by contract and by statute, the board of the homeowners' association . . . was obligated to maintain and repair the common areas."). We agree with these holdings.

**{¶ 33}** The Association, however, cites *Attar v. Marine Towers East Condominium Owners' Assn*., 2018-Ohio-3274 (8th Dist.) for the proposition that "the statute is a mere gap-filling provision[.] . . . Where the declaration or bylaws specifically contemplate the matter addressed by the statute . . . the statute does not apply." Appellee's Brief at 17, citing *Attar* at ¶ 6. The problem with this citation and the Association's argument, though, is that *Attar* is a case about a different part of the statute, R.C. 5311.081, concerning a completely distinct topic (mandating that associations annually adopt estimated budgets for revenues and expenditures that include reserves in case major capital items need to be replaced), and the part of the decision in *Attar* that the Association cites reflects an outdated version of the law. The new version of R.C. 5311.081 (again, this is not the statutory section that applies to this case) does not favor their interpretation.

**{¶ 34}** As to the dismissal of Bigham's statutory breach count, we conclude that the trial court erred, as there is no bar to bringing both statutory and contractual breach claims. The assignment of error, as to this claim, is sustained.

Negligence

**{¶ 35}** Finally, Bigham argues that the trial court erred when it ruled her negligence

claim against the Association was precluded by the economic loss doctrine. She contends that doctrine does not apply because she sought injunctive relief.

**{¶ 36}** The economic loss doctrine is a legal principle that distinguishes between contract law and tort law, primarily to maintain a clear distinction between the two in situations where both theories could potentially apply. *Motorists Mut. Ins. Co. v. Ironics, Inc.*, 2022-Ohio-841, ¶ 68. It operates to prevent contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contractual relationship. *Schaefer v. IndyMac Mtge. Servs.*, 2012 WL 4929094 (D.N.H. Oct 16, 2012). *See also Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 44 (1989); *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 2005-Ohio-5409, ¶ 6 ("The economic-loss rule generally prevents recovery in tort of damages for purely economic loss."); *Plus Mgt. Servs., Inc., v. Liberty Healthcare Corp.*, 2024-Ohio-3127 (2d Dist.).

**{¶ 37}** On the surface, this appears to be a clear-cut instance where the economic loss doctrine would apply: Bigham's negligence claim is a tort and is based on the contractual relationship with the Association. However, she argues that because she is seeking injunctive relief (not purely economic or compensatory), the rule does not apply. After examining case law from other jurisdictions (we have not decided this issue before), we are persuaded by their logic; the economic loss doctrine *does* apply.

**{¶ 38}** In *Schaefer*, the plaintiff entered into a refinancing loan with a bank which was secured by a mortgage. When he failed to make timely payments, he defaulted, and eventually his home was foreclosed upon. Before the foreclosure sale, however, Schaefer found another person to contribute to his mortgage and informed the servicer, which gave

him contact information for a "customer contact manager." The contact information was wrong, and Schaefer never heard from the servicer again. His home was then sold at a foreclosure auction.

**{¶ 39}** Schaefer filed suit alleging, among other things, negligence. He argued that while his claims were based on the contractual relationship he had with the bank and servicer, his suit should not be barred by the economic loss doctrine because he was seeking an injunction against eviction and an opportunity to reinstate his loan, not damages for economic loss. Ultimately, even though he was asking for injunctive relief, the court dismissed Schaefer's negligence claims because he had failed to allege a breach of a duty independent of those associated with the loan (the contract). The same result was reached in *Clark v. General Motors,* 2016 WL 3574408 (S.D. Miss. June 23, 2016).

**{¶ 40}** Because the economic loss doctrine is designed to maintain a distinction between damage remedies for breach of contract and for tort, courts have refused to find that requests for injunctive relief are enough to overcome dismissal. *See also Theuerkauf v. United Vaccines Div. of Harlan Sprague Dawley*, *Inc.*, 821 F.Supp. 1238, 1242 (W.D. Mich. 1993) (noting that allowing plaintiffs to defeat the economic loss doctrine by seeking punitive damages "would swallow the [d]octrine"). We therefore conclude that Bigham's negligence claim is barred by the economic loss doctrine. The fact that she asked for injunctive relief does not change the purpose of the doctrine.

**{¶ 41}** As to her second assignment of error, we conclude that the trial court erred in dismissing her statutory breach claim, but that it did not err by dismissing the negligence

count. The assignment of error is sustained in part and overruled in part.

## IV.    Conclusion

{¶ 42} The trial court's judgment will be affirmed in part and reversed in part. The trial court's judgment is partially affirmed and partially overruled as to the breach of contract claim; there was a genuine issue of material fact as to whether the crawl space is a foundation, but the trial court did not address whether the crawl space is part of the "unit," and finding that it is, we reverse. On remand, the court may address whether there was damage to the crawl space and if so, what must be done to address it. The trial court's judgment will also be affirmed as to the negligence claim; it was barred by the economic loss doctrine. The judgment as to the statutory breach claim, however, is reversed. The case will be remanded for further consideration in accordance with this opinion. Further, because the trial court failed to rule on the Association's duty to repair the lawns surrounding Bigham's unit, we remand that question for the trial court to address it as well.

. . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.